# Ward's Appeal.

*Municipalities—Zoning ordinance—Constitutional law—Special commission—Zoning board — Residential district — Buildings for business purposes—Actions—Parties—Due process—Police power—Acts of June 21, 1919, P. L. 570, and May 1, 1923, P. L. 122.*

1. The mere fact that the general scheme of a zoning ordinance or statute may be to depreciate property value, is not a sufficient consideration to make it invalid as a whole; as a proper exercise of the police power, it does not violate the due process clause.

2. A particular provision of a zoning ordinance must in itself be clearly arbitrary and unreasonable and without substantial relation to public health, safety, morals or general welfare, before it can be declared unconstitutional.

3. The exclusion, in a zoning ordinance, of buildings devoted to business, trade, etc., from residential districts, bears a rational relation to the health and safety of the community.

4. The power to forbid the erection of a building of a particular kind or for a particular use, is to be determined, not by an abstract consideration of the building or the thing, considered apart, but by considering it in connection with the circumstances and the locality.

5. Under the Acts of June 21, 1919, P. L. 570, and May 1, 1923, ·P. L. 122, a zoning board is entitled to be heard in court, or to appear as a party in the hearing of appeals from its decision.

6. Such a board is not a special commission within the terms of section 20, article III, of the state Constitution.

7. Where an owner of a one-story frame building in a residential neighborhood, is notified by the municipal authorities to make it safe or raze it, and the owner submits plans, which the zoning board decided was the equivalent of razing "the present building and the erecting of an entirely new storeroom," contrary to the zoning ordinance, the decision of the board will be sustained, and such decision is especially justified, where it appears that the intrinsic value of the property was not affected, and the board finds that "it would not be an undue hardship" for the owner to use his property for purposes in conformity with the zoning ordinance.

Mr. Justice KEPHART filed a concurring opinion, Mr. Justice SCHAFFER a dissenting one.

Argued March 17, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 74, March T., 1927, by D. C. Ward, from order of C. P. Allegheny Co., Jan. T., 1927, No. 2359, sustaining decision of the Zoning Board of Appeals, in case of Appeal of D. C. Ward. Affirmed.

Appeal from decision of the Zoning Board of Appeals. Before CARNAHAN, J.

The opinion of the Supreme Court states the facts.

Decision sustained. D. C. Ward appealed.

*Error assigned*, inter alia, was order, quoting record.

*F. C. McGirr,* for appellant.—The erection of a small retail store in a residence neighborhood cannot offend against the public health, public safety, or the general welfare, and the forbidding of the same is therefore illegal and unreasonable: White's App., 287 Pa. 259; Spann v. Dallas, 111 Tex. 350; Smith v. Atlanta, 132 S. E. 66; Friend v. Chicago, 261 Ill. 16; Goldman v. Crowther, 128 Atl. 50.

The ordinance does not apply to a small storeroom, such as a drug store or a grocery store.

The board of appeals under the zoning ordinance is an illegal body: Goldman v. Crowther, 128 Atl. 50; Mellon v. Pittsburgh, 21 Pitts. L. J. 185; Perkins v. Phila., 156 Pa. 554; Moll v. Morrow, 253 Pa. 442.

*Thomas M. Benner,* First Assistant City Solicitor, with him *Charles A. Waldschmidt,* City Solicitor, for appellee.—What appellant wants to do is to build a new building and do it under the guise of repairing an old one, which, when the job is finished, will be nonexistent. He cannot do this. If he wishes to build a new building it must conform to the ordinance: Lowell v. Stoklosa, 145 N. E. 262; Miller v. Los Angeles, 234 Pac. (Cal.) 381; Pritz v. Messer, 149 N. E. (Ohio) 30.

The board of appeals has the right to contest the appeal in the common pleas court: Swarthmore Boro. v. P. S. C., 277 Pa. 472.

The board of appeals is a legal body: Perkins v. Phila., 156 Pa. 554; Porter v. Shields, 200 Pa. 241; Stratton v. Allegheny Co., 245 Pa. 519; Moll v. Morrow, 253 Pa. 442.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 9, 1927:

D. C. Ward, appellant, owns a one-story frame building, at least half a century old, on Fifth Avenue, Pittsburgh, in a residential neighborhood. On September 10, 1926, he was notified by the municipal authorities that his property was in "a dilapidated and unsafe condition" and that he must "make the same safe and secure, or raze [it], within thirty days from the above date, or the City of Pittsburgh [would] be compelled to do so at [his] expense." He submitted plans for improving the property which, as he claims, complied with the notice from the city, but the municipal building inspector refused approval; thereupon Ward appealed to the zoning board, a body constituted, by the Acts of June 21, 1919, P. L. 570, and May 1, 1923, P. L. 122, to pass on such matters. The board decided that the improvement as planned by appellant amounted to "the razing of the present building and the erecting of an entirely new storeroom," and, deeming the erection of such a trade or business structure contrary to the zoning ordinance of the municipality, the board "denied" the appeal, saying, inter alia, that "it would not be an undue hardship on this applicant to use [his] property for purposes in conformity with the provisions of the zoning ordinance." On appeal to the common pleas, that tribunal sustained the board, stating in its opinion that the application for a permit was properly refused because the plans submitted by appellant provided for a new building and not the repair of an old one, and, further, it did not appear

from the evidence in the case that "either the building inspector or the board [had], in any manner or to any extent, abused the discretionary powers vested in them by law; [but], on the contrary, it [did] appear that [such] power......[had been] wisely exercised" and, therefore, their action should be sustained, unless the law of the State on the subject was unconstitutional or the ordinance unreasonable. The court concluded that the underlying Acts of Assembly were constitutional and the ordinance reasonable and in accord therewith; also, that the board was entitled to be heard in court upon an appeal from its decision. This appeal ensued.

We see nothing on the present record which requires us to disturb the findings of the municipal authorities and the court below that the structure which they enjoined appellant from erecting was a new building, for trade purposes, of a character that (if any buildings can legally be subject to such treatment) could reasonably be forbidden in a residential neighborhood, such as here involved,—a locality in which, according to the evidence before us, the last business building was erected at least 15 years ago, and where, aside from that one, no trade or business structures had been erected for more than 35 years past. It is important to note at this point, the court below particularly states that appellant "has permission from the [municipal] authorities to continue the use [of his property] for commercial purposes," if made safe by proper repairs; further, that the record presents no evidence of subterfuge, bad faith or abuse of power on the part of those vested with authority.

We had before us the ordinance now in question, and the statutes which authorized such ordinance (Acts of 1919 and 1923, supra,) in White's App., 287 Pa. 259, where it was decided that, while the system of zoning thus provided was not necessarily unconstitutional as a whole, the part there particularly involved presented an unreasonable exercise of the police power and so could not be sustained. The guiding general principles are

discussed at length in that case; the question now before us is, Are they departed from in this case, either by the essence of the particular provision enforced by the court below or by its application to the facts at bar?

In the White Case, Justice KEPHART, speaking for the court, said of the ordinance: "The purpose......is to bring about an orderly development of cities, to establish districts into which business, commerce and industry shall not intrude, and to fix certain territory for different grades of industrial concerns. Such limitations may, in a general sense, be a reasonable exertion of the police power; but, while the ordinance as to its general structure may be valid, it must, in specific application to any of its various phases, be tested by the principles discussed. The ordinance as a whole is similar in many respects to the zoning ordinances in other cities. It is impossible to reconcile the rulings of the supreme courts of the various states on the question of constitutionality of [such] ordinances; each case must of course be decided on its own facts. Therefore, we leave other applications open for relief. There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare; the exercise must have a substantial relation to the public good within the spheres held proper."

Since the above-quoted matter was written by us, the Supreme Court of the United States, in Euclid Village v. Ambler Realty Co., 47 Sup. Ct. R. 114, 119, has held that the mere fact that the effect of the general scheme of a zoning statute or ordinance may be to depreciate property values, is not a sufficient consideration to make it invalid as a whole, and that a particular provision under attack must in itself be clearly arbitrary and unreasonable and without substantial relation to pub-

lic health, safety, morals or general welfare before it can be declared unconstitutional.

In the case to which we refer, speaking of a provision like the one here particularly involved, the federal Supreme Court said: "The serious question......arises over the provisions of the ordinance excluding from residential districts apartment houses, business houses, retail stores and shops, and other like establishments. This question involves the validity of what is really the crux of the more recent zoning legislation, namely, the creation and maintenance of residential districts, from which business and trade of every sort, including hotels and apartment houses, are excluded. Upon that question this court has not thus far spoken. The decisions of the state courts are numerous and conflicting; but those which broadly sustain the power greatly outnumber those which deny it altogether or narrowly limit it, and it is very apparent that there is a constantly increasing tendency in the direction of the broader view. We shall not attempt to review these decisions at length, but content ourselves with citing a few as illustrative of all. [Here follows the citation of many cases]. As evidence of the decided trend toward the broader view, it is significant that in some instances the state courts in later decisions have reversed their former decisions holding the other way. For example [naming cases listed in the opinion]. The decisions enumerated in the first group cited above agree that the exclusion of buildings devoted to business, trade, etc., from residential districts, bears a rational relation to the health and safety of the community. Some of the grounds for this conclusion are promotion of the health and security from injury of children and others by separating dwelling houses from territory devoted to trade and industry; suppression and prevention of disorder; facilitating the extinguishment of fires, and the enforcement of street traffic regulations and other general welfare ordinances; aiding the health and safety of the community, by excluding from resi-

dential areas the confusion and danger of fire, contagion, and disorder, which in greater or less degree attach to the location of stores, shops, and factories. Another ground is that the construction and repair of streets may be rendered easier and less expensive, by confining the greater part of the heavy traffic to the streets where business is carried on."

The opinion in the Euclid Village Case points out also that many regulations which would not have been tolerated as legal in earlier times, when "urban life was comparatively simple," must now be viewed by the courts as valid, when the people, by the law-making power, have declared them expedient and necessary; after which, the court states: "The power to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing, considered apart, but by considering it in connection with the circumstances and the locality." Then, leading up to the long quotation which appears in the preceding paragraph of our instant opinion, the Supreme Court plainly says that, in its view, "the restrictive provisions [of zoning ordinances] may be sustained upon the principles applicable to the broader exclusion from residential districts of all business and trade structures."

While the facts before the federal Supreme Court in the case which we have been discussing did not especially involve the exclusion from a residential district of trade structures, such as stores, which is the particular matter before us in the present case, yet that tribunal took occasion to point out the principles on which statutes or parts of authorized municipal ordinances providing for such exclusion might be held constitutional, so far as their general effect is concerned, and the views thus expressed are entitled to great weight.

We agree with the court below that,—in view of the general structure of section 9 of the legislation author-

izing the creation of the zoning board, and of the Act of May 1, 1923, P. L. 122, allowing costs to be assessed against that body on disposition of an appeal from its rulings,—"the board is entitled to be heard in court" or to appear as a party, on the hearing of such appeals. We also agree with the contention of the city solicitor that the board is not such a body as is prohibited by section 20 of article III of the Constitution of Pennsylvania,—which forbids the General Assembly to create "special commissions" to perform municipal functions; but this branch of the case has been so well and so recently passed on by our Superior Court that it would serve no useful purpose to go over the matter again at this time: see that part of the opinion of the Superior Court in Junge's App., 000 Pa. Superior Ct. 000 (filed March 3, 1927), which deals with the constitutionality of the present board of appeals under the above article and section.

Our attention has been called to Smith v. City of Atlanta, 161 Ga. 769, 132 S. E. 66, where the Supreme Court of Georgia recently reversed an order forbidding the erection of stores in a residential section set aside under a zoning ordinance, and declared that part of the ordinance unconstitutional; but this decision was prior to the opinion of the Euclid Village Case by the federal Supreme Court, and the facts in the Georgia Case were quite different from those in the one now before us. In the present case there is no allegation that the property in question is fit only for business purposes, that it is not suited for residences, or that the zoning ordinance has depreciated its value; whereas in the Georgia Case the owner alleged, as stated by the court, that her property was "peculiarly well adapted and especially valuable to be used for business purposes, because of its proximity to the railroad, and for other reasons, and for the same reasons she alleged that her property was practically valueless if she should be restricted to erect residential buildings thereon......Plaintiff offered evi-

dence to show that her property, alleged to be worth many thousands of dollars, would, under the operation of the ordinances, be practically valueless." In the case now before us there has been, and can be, no such allegations; here, at the most, the effect of the ordinance is, not to deprive appellant of his property, but to regulate its use so as not to adversely affect the welfare of the section where it is located. The order appealed from simply says to the present owner, "You shall not erect a new commercial building in this residential neighborhood"; and we agree with the finding of the zoning board that on the facts in this case its decision represents no "undue hardship."

We may say at this point that the fact of the refusal by the Supreme Court of the United States to entertain an appeal in the Georgia Case has no special significance and cannot be taken as an indication of departure from its views expressed in the Euclid Village Case; the latter was an appeal from a federal court and involved a construction of the national Constitution, while the former was decided by a state court, under the Constitution of Georgia, and did not necessarily involve any federal question. Since the refusal of an appeal in the Georgia Case, the Supreme Court of the United States has decided Beery v. Houghton, (not yet reported). This case involved the question, whether the City of Minneapolis could, by ordinance, prevent the erection of certain kinds of flat houses in zones set aside for purely residential purposes. The Supreme Court of Minnesota upheld the constitutionality of the ordinance, saying at the end of its opinion: "We hold that a fair zoning ordinance resulting in the exclusion of a four-family flat building from a designated residential district is constitutional; this holding is not in harmony with our earlier decisions......but......so far as [such decisions are] in conflict with the view now adopted, they are not to be followed." When the case came to the federal Supreme Court, in disposing of the appeal, it briefly

said: "Affirmed on the authority of Village of Euclid v. Ambler Realty Co." We call attention to this Minnesota Case only to reinforce our previously expressed thought that the refusal of an appeal in the Georgia Case by the federal Supreme Court in no sense signifies a departure from the views expressed by that tribunal in the Village of Euclid opinion.* Of course, none of the cases cited in our present opinion, other than the decisions of this court, are binding authorities with us; they are cited either for a special purpose, as just indicated concerning the Minnesota Case, or merely as illustrative of the views entertained by other appellate tribunals on the subject before us.

Before closing this opinion, one other case is worthy of mention. The Supreme Court of Tennessee, in Spencer-Sturla Co. v. City of Memphis, 290 S. W. 608, 610-11, recently upheld a zoning ordinance, saying, inter alia: "We think a provision that the land within a specified district of a city may be used only for residence purposes......is a regulation of the use of the land...... and not a prohibition of its use......In making classifications of persons or property for the application of statutes or ordinances enacted in the exercise of the police power, the legislative department......is uniformly held to be vested with broad discretion......; it has been frequently held in other jurisdictions [citing authorities] that the inclusion of a parcel of land in a residence district is not rendered unreasonable by the [mere] fact that the value of such parcel is greater for commercial purposes than for residence purposes." But, to return to the case at bar, as previously said, there is no averment or evidence that the intrinsic value of appellant's property is harmed by the statute, the ordinance or the order complained of on this appeal; we see no reason to disturb the findings or conclusion of the court below.

---

*See also opinion by Judge SUTHERLAND in Zahn v. Board of Public Works, 000 U. S. 000, filed May 16, 1927.

The order sustaining the decision of the board of appeals is affirmed, at cost of appellant.

CONCURRING OPINION BY MR. JUSTICE KEPHART:

In White's App., 287 Pa. 259, as stated in the majority opinion, we held zoning ordinances in their general structure to be lawful exertions of the police power, and that, in their general effect, they do not invade any constitutional right of an owner by depriving him of property without due process of law; but that the ordinance, applied to the facts of a given case, when passing under the scrutiny of the Constitution, might involve such transgression; if it did, the ordinance as to such act was invalid.

The Supreme Court of the United States, in the Euclid Case, 47 Superior Ct. Rep. 114, likewise referred to, sustained zoning ordinances in general as a comprehensive exercise of police power, and held that, as such, they were not violations of the 14th Amendment. That court left open for future action, as this court did in White's Appeal, the application to the facts of particular cases on the test of constitutionality, as was also left open the scope of the provisions there considered, as well as the validity of provisions not involved in that proceeding. As stated on page 121: "It is true that when the provisions set forth in the ordinance.....come to be concretely applied to particular premises......or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable. But where the equitable remedy of injunction is sought, as it is here, not upon the ground of a present infringement or denial of a specific right or of a particular injury in process of actual execution, but upon the broad ground that the mere existence and threatened enforcement of the ordinance by materially and adversely affecting values......curtailing the opportunities of market, constitute a present and irreparable injury, the

court will not scrutinize its provisions sentence by sentence to ascertain......whether there may be......provisions......which if attacked separately might not stand the test of constitutionality." The constitutionality of the ordinance was sustained "in its general scope" only.

In considering White's Appeal, supra, the ordinance was subjected to the test of the state and the federal Constitutions. Our investigation and conclusion as it related to or was covered by our own Constitution was final. The Euclid Case was an appeal from the Federal Circuit Court. The Supreme Court of Ohio did not consider the ordinance in question as it related to the Constitution of that state. The Euclid Case decided that the zoning ordinance in its general features did not offend the 14th Amendment, leaving open its application to a particular case under that amendment, as stated above, as well as the state's interpretation on its Constitution.

This is illustrated in the case of Smith v. Atlanta, referred to in the majority opinion. The question before that tribunal was whether, in a locality zoning against the erection of business or trade houses, a retail grocery store could be built. The state Supreme Court discussed broadly the question of constitutionality, and, from its references to the decisions of other state and the federal courts, it held such exertion of authority unreasonable as it related to that particular locality, and therefore unconstitutional. Since the court was silent as to the particular constitution, state or federal, it was invoking, it may well be assumed the ordinance was considered invalid under the 14th Amendment. The federal Supreme Court refused an appeal in that case.

Moreover, it is my judgment, subject to what has been said, that, in determining the reasonableness of zoning ordinances which deal so intimately with the affairs of citizens of a state in local matters, the federal Supreme Court will place the burden of determining whether or not an ordinance is reasonable squarely on state courts,

and will be largely guided by their decisions unless the power is abused. In applying the state and federal Constitutions to the facts before us, our hands are in no way tied. The decisions of other states are helpful only as illuminating the question from the point of view of the various minds considering it.

The Euclid Case held that a mere apprehension of depreciation in value was not of sufficient importance to stay the police power, the property loss, if any, at that time being negligible. In the Atlanta Case, depreciation and adaptability were the grounds of complaint; the ordinance was in process of actual execution, and was not merely a remote threat; the state court held it unreasonable. There is a vast difference between mere apprehension or threat and actuality. Depreciation in value is a relative term. There may be degrees of it, and, where the validity of authority under the police power is concerned, its general scope being lawful, slight inconvenience or curtailment of freedom, standing alone, should not be considered sufficient to sustain unreasonableness in the application of an ordinance.

May a city, acting under the state's authority, enforce an ordinance which establishes a district into which trade or business cannot enter, and will such regulation prevent the erection of a retail grocery or, drug store? The first part of this question is answered in White's Appeal, where it was held a reasonable exercise of authority. Is the proposed retail grocery or drug store included in that prohibition? When discussing this question, we of necessity consider reasons applicable to the general as well as the particular exercise of authority. If the prohibition includes such stores, it should be based on a "substantial relation to the public good," a public good that has direct connection with health, morals or safety. In ascertaining the public good by which the particular application of a zoning ordinance is to be sustained, care should also be taken that we do not permit such an instrument to become one of oppression

in favor of a selected few or one whereby favoritism may be practiced without hindrance, and that it does not become a regulation of business as such, not through prices or rates, as in the case of service companies, but in a manner more closely resembling the legislative regulations of professions, trades and occupations such as medicine, engineering and mining.

There is no doubt legislation of this type is gradually extending its scope, and we are living in an era of regulation; the chief aim of some reformers seems to be the regulation by the government of the affairs of those in every walk in life,—until the regulator himself is specifically affected, then it is all wrong. Here we have regulation of the use of property owned in fee.

If the proposition before us was to prohibit generally retail grocery or drug stores in every residential district, or in all cases, I would disagree absolutely with any such rule. It would be wholly arbitrary and unreasonable. The majority opinion does not attempt any such thing although this case is on the border line.

It has been stated, a retail grocery or drug store is a lawful business which does not threaten the public health or endanger the public safety. It does not impair the public comfort or the welfare of a community. As ordinarily conducted, they are not places of noise or disturbance, generally speaking. The trade is reputable and honorable. Only highly sensitive persons would feel aggrieved at the business. It is not, by any means, a nuisance, but an imperative need in life, not, however, to be located of necessity in numbers in a residential district. All of which should be considered in cases like the one before us.

On the other hand, one or a number of citizens who own property along a given street, used and occupied as residences, should not have their ownership depreciated in value merely to satisfy the personal wish of one property owner. Here we meet again depreciation, as discussed above,

The chief reasons which move me to concur in the decision in this case are: First, there are a number of stores in this same block and it is proposed to add another; collectively, such trades, by building a number of business houses, have no more right to turn this locality into a business section, at the expense of the resident property owners, by greatly depreciating or increasing the value of their properties, than do the residents to exclude every store. In the enforcement of all zoning ordinances, of course some must, to a slight degree, be hurt; the question is one of degree, and, in balancing the equities, the great weight lies with those first in the locality who have made it a place for homes. There should be some security in a home. It is not the case of barring all stores in the neighborhood, but of preventing an increase in their number. Second, appellant bought this property with the zoning ordinance staring him in the face. He knew it prevented him from doing the thing he is now trying to do, before he invested his money. Property owners, by a restrictive covenant in a deed, may thus limit the use of the property, and subsequent owners cannot complain since they knew it when purchasing the land. Here, when appellant bought, in September, 1926, the ordinance had been passed and was in active operation. Knowing this, he cannot complain of the order made in the court below.

I consider the building now standing as though it did not exist. It is ready to fall down, and a new one is proposed to be erected in which to start the store business. With the knowledge of these conditions on the ground, the court below was clearly warranted in finding that, apart from the question of depreciation in value, the zoning restriction as to this place should be enforced.

In the Atlanta Case, it was alleged the property was well adapted and specially valuable for business purposes, because of its proximity to the railroad and for other reasons. For the same reasons, the owner claimed that her property was practically valueless if she should

be restricted to a residential building.   At the time of the suit, the property was vacant and had no earning capacity.   She paid the taxes and interest on the money invested in the property.   On this showing, the Supreme Court of Georgia said she had a right to erect a retail store and the United States Supreme Court refused an appeal.

Under the facts in this case, there is no question of money value or other circumstances to move the court, merely a question of doing something regardless of injury or any other question.   If this store is permitted, then, with other stores now or soon to be erected, this section will be turned into a business section.

For these reasons and those stated in the majority opinion, I concur in the judgment.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

I am not willing to assent to the view that a city zoning board may deny to a landowner the right to devote his property to business uses where it has been so used prior to the passage of the zoning ordinance.   It may be that zoning ordinances which prohibit the right to erect business structures in purely residential neighborhoods should be upheld, but where a neighborhood already has a business building located therein, I think no board should have the power to compel the discontinuance of such use for reasons aesthetic or otherwise.   To me this seems an unreasonable exercise of the police power.