Munhall Borough Appeal.

300

Argued November 14, 1950. Before HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (RHODES, P. J. and GUNTHER, J., absent).

*E. V. Buckley*, with him *Charles J. Spinelli, John Braden McAdoo* and *Mercer & Buckley*, for appellant.

*Paul M. Segal*, with him *Leonard Boreman, Harry P. Warner, Krause & Boreman* and *Segal, Smith & Hennessey*, for appellee.

OPINION BY DITHRICH, J., January 12, 1951:

The Borough of Munhall has appealed from a decree of the Court of Common Pleas reversing a deci-

sion of the Board of Adjustment refusing to issue a building permit under the Borough zoning ordinance. The facts are not in controversy.

George D. Lord, appellee, a licensed amateur radio operator, applied to the building inspector of the Borough for a permit to erect a radio tower in the rear yard of his home which is in a "B" residence district of the Borough. The permit was refused by the building inspector and by the Board of Adjustment. On appeal by the applicant to the Court of Common Pleas the Borough was granted leave to intervene. With the antennae attached to his house he can send messages as far as the West Coast of the United States and receive messages from any place in the world. The purpose of the proposed tower is to increase the power of the applicant's short wave radio set so that messages can also be sent to any place in the world.

The tower is 32 feet in height, of metal construction, set for permanent use in a concrete base in the shape of an equilateral triangle, 49 inches on each side, and converging to 12 inches on each side at the top. The beam antenna rests on top of the mast and consists of five parts—a cross piece 12 feet long and four adjustable rods, each capable of being extended to a length of 21 feet. The antenna assembly, as a whole, is capable of being rotated by electrical control from the interior of the house for the desired direction of transmission or reception.

The zoning ordinance provides in part as follows: "Section 400. In a 'B' Residence District, the following regulations shall apply. Section 401. A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes: (1) All uses permitted in an 'A' Residence District. (2) Accessory use on the same lot with and customarily incidental to any of the above permitted uses and not seriously detrimental to a residence neighborhood . . ."

The testimony disclosed that no other such tower has been erected anywhere in the Pittsburgh district except for commercial use.

The question for determination is whether the Board of Adjustment abused its discretion in refusing the permit. "It has been held frequently that where an official body in its administrative capacity has acted upon a matter properly before it the court should not reverse except where there is a *manifest and flagrant abuse of discretion*. [Emphasis added.] See Liggett's Petition, 291 Pa. 109, 139 A. 619; Valicenti's Appeal, 298 Pa. 276, 148 A. 308; and Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 178 A. 813 . . . .

"If a court can set aside the findings of the board . . ., which are supported by substantial evidence and not otherwise erroneous as a matter of law, and decide the factual question itself, the board will become more or less a useless formality. If the board's determination is shown to be arbitrary and contrary to the weight of the evidence the court is authorized and should make its own ruling: Gilfillan's Permit, 291 Pa. 358, 363, 140 A. 136; Junge's Appeal (No. 1), 89 Pa. Superior Ct. 543." *Perelman v. Yeadon Borough Bd. of Adjustment,* 144 Pa. Superior Ct. 5, 10, 11, 18 A. 2d 438.

However, in the record before us we find nothing to justify the conclusion of the learned judge of the court below that "in the circumstances of this case it would be *capricious* to hold that an outside aerial [such as appellee contemplated building] . . . is not an 'accessory and customary' use of a dwelling premises," and that "refusal of the permit constituted a *manifest* abuse of discretion." (Emphasis added.) We reiterate: "In a case of this nature, the only question properly before the court below was whether the Board of Adjustment . . . was guilty of a manifest and flagrant abuse

of discretion: [citing cases] . . . . In Triolo v. Exley, 358 Pa. 555, 558, 57 A. 2d 878 (a zoning case), Mr. Justice PATTERSON, speaking for this Court said,— '. . . Only where the record clearly establishes an arbitrary, capricious or unreasonable determination or a clear violation of positive law will appellate courts interfere with the exercise of an administrative duty by officials entrusted therewith: Floersheim Appeal, 348 Pa. 98, 100, 34 A. 2d 62.' None of the specified grounds for appellate interference is present here." *Reininger Zoning Case,* 362 Pa. 116, 117, 118, 66 A. 2d 225.

We are forced to the conclusion that the court below did not give due and proper consideration to §93 of the Act of July 10, 1947, P. L. 1621, which added a new Article XXXIII and §§3301 to 3310, inclusive, to the Act of 1927, May 4, P. L. 519. Section 3303 of the new article, 53 PS §15211.3, captioned "Purpose in View," provides in part: "Such [zoning] regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to *conserving the value of buildings* and encouraging the most appropriate use of land throughout the borough." (Italics supplied.)

On that point the hearing judge said: "Nor is there any validity in the argument that the mast antenna will reduce the value of real estate in the district where it is located . . . . The legality of one's use of his real estate does not depend upon the effect of that use upon the value of another's real estate." As a generality that is true, but "This right is not without limitation. The right to use property for any legitimate purpose as an attribute of ownership is not absolute or unrestricted; it is subject to a superior claim of the public, provided that claim is not unreasonable, and has a necessary relation to health, safety, morals, and general welfare of the public." *Perrin's Appeal,* 305 Pa.

42, 48, 156 A. 305. And when the legislative body of a state has explicitly provided that zoning regulations may be made with the "purpose in view" of "conserving the value of buildings," it cannot be gainsaid that the regulation in question is a reasonable limitation or restriction.

Nor is the fact that there was no evidence before the court that the violation of the ordinance would have "such an effect" controlling. It may reasonably be assumed that the Board had the "purpose in view" when it determined that the erection of the antenna would be in violation of the "Zoning Code in a 'B' Residential District" and that "it substantially devaluates surrounding residential property," as stated in its answer to the appeal petition in the Court of Common Pleas.

The fact that the erection of the antenna was not an "accessory use . . . customarily incidental" to a residence in a "B" residence district is implicit in the Board's finding that it was a violation of the zoning ordinance. Accessory and customarily incidental use comprehends not only the kind but the degree of use. This Court takes judicial notice of the fact that the use of outside aerials for radio reception is gradually waning because the improvement of inside aerials renders them no longer necessary or "customarily incidental" to a residential district.

In view of the present-day custom and upon consideration of the entire record we are of opinion that the court below was clearly in error in holding that "refusal of the permit constituted a manifest abuse of discretion."

In one of the two cases chiefly relied upon by the appellee, *Miller v. Seaman*, 137 Pa. Superior Ct. 24, 8 A. 2d 415, this Court said, speaking through KELLER, P. J. (p. 29) : ". . . the zoning ordinance is not involved in this appeal." And we see no compelling reason for this Court to follow the majority opinion in the other

case, *Village of St. Louis Park v. Casey,* 218 Minn. 394, 16 N. W. 2d 459. That was a suit "to enjoin defendant from maintaining in a residential district certain poles and wires for radio purposes in alleged contravention of a village zoning ordinance." In reversing the trial court which granted the injunction, the majority opinion said (p. 397) : "The evidence . . . tends to show that there are at least six amateur stations in plaintiff village [population 7,737], some with higher poles than defendant's." In the case at bar "the evidence tends to show" that there is not another such structure anywhere in the Pittsburgh district; certainly none other in Munhall Borough (population, 1940 census, 13,900). In the Minnesota case (two Justices dissenting) the minority opinion said (p. 400) : "In the majority opinion judicial notice is taken 'of the custom of householders to use outside antennae or aerials for radio reception.' The type of equipment here involved . . . is a far cry from the type ordinarily used in residences."

Decree reversed.