## Alden Park Corporation et al. v. Philadelphia Zoning Board of Adjustment

*Paul Freeman*, for appellant.

*James L. Stern* and *Abraham L. Freedman*, for appellee.

MACNEILLE, P. J., November 22, 1952. — We are considering the appeal taken by plaintiff from the action of the zoning board of adjustment, which refused to grant a permit after hearing. The board

heard 10 protestants. One of the protests was that there had been a business sign on the premises of the apartment house and restaurant conducted by plaintiff prior to August 1933, but that sign had not been at the location of the present sign, and that the former sign was not as large nor was it the same kind of sign as the one now erected or proposed to be erected. One of the complaints was that the lights from the sign would glare through the windows of the dwelling of one of the protestants.

The zoning board found that the proposed sign did not comply with the terms of the Zoning Ordinance as to setback from School Lane and setback from Wissahickon Avenue, which setback would be 20 feet, and that the proposed setback is four feet. The board further found that the erection of the sign, accessory to a restaurant, or extension thereto, is not permitted in an E residential district, and the board concluded from the evidence that a sign existed on the premises in the location questioned as early as August 10, 1933, and prior thereto, but that the proposed sign is not the same type or size as that of 1933. From the decision of the board, plaintiff appealed.

Appellant owns an apartment house in Germantown and as a part of its operation of the building it maintains a dining room containing one main room and six private dining rooms and a cocktail bar. Approximately 350 people can be served at one time and about 6,000 meals and 3,000 drinks are served per week. There are some 70 employes and nearly all of the food and drink is served to the general public. Two hundred thousand dollars has been spent in improving and refurnishing the dining rooms. This service was entered into by appellant in 1926, at which time there was erected an electrically illuminated sign at the entrance located at the northwest corner of School Lane and Wissahickon Avenue, containing the words, "Alden

Park Dining Room". Some two or three years later, but prior to August 10, 1933, this sign was replaced by a neon sign located at the same spot behind one of the stone entrance posts to the driveway and, in turn, this sign was replaced after 1945 by another "flashing neon" sign containing in legend, "Alden Park Dining Room, Cocktails".

The drive being narrow, appellant, at the solicitation of publicly minded people, reconstructed the driveway, widening it and making a small traffic island in the middle of the entrance, and the stone gateposts were removed. This sign had been maintained for over 22 years. The testimony is conflicting as to the size of the sign, but there can be no doubt that it is approximately 24 square feet and at present contains the legend, "Alden Park, Dining Room". There is also some disputed testimony as to whether the lighting of the sign, which is constant and not flashing, is stronger or weaker than that maintained on the neon sign prior to August 10, 1933.

We do not doubt that neon signs were invented and in common use prior to August 10, 1933. This is confirmed by authoritative evidence of a letter from a sign company appearing in the record certifying that they have been in common use since the early twenties.

The question to be resolved in this case is whether an admitted nonconforming right to maintain an advertising sign on the property of appellant is limited strictly to the kind, i.e., material, lighting, legend, size and location, as it existed prior to August 10, 1933. This is the burden of the brief filed on behalf of the City of Philadelphia. Counsel for the zoning board of adjustment and the City of Philadelphia concedes that there is a right to maintain a sign on the premises but contends: (a) That it must be at the same location; (b) that it must be made of wood; (c) that it cannot be lit by modern electrical facilities; (d) that it must be ex-

actly the same size as the original sign, and (e) that it must contain the same legend.

Comparing these conditions with the record in this case, it is clear that the sign is substantially the same size and contains the same legend as the original sign; that it is lighted by a steady neon bulb or bulbs; and that the only material change in the situation is the removal of the sign post nine feet away from the point of original erection and the construction of a modern stainless steel sign instead of a wooden sign. The law in Pennsylvania has been announced by the Supreme Court as follows, in Humphries et al. v. Stuart Realty Corporation et al., 364 Pa. 616, 621, by Justice, now Chief Justice, Horace Stern:

"A non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted: Gilfillan's Permit, 291 Pa. 358, 362, 140 A. 136, 138; Haller Baking Co.'s Appeal, 295 Pa. 257, 261, 262, 145 A. 77, 79; Cheswick Borough v. Bechman, 352 Pa. 79, 82, 42 A. 2nd 60, 62."

Even were we not to treat the situation as a nonconforming use, the sign could be maintained under recent decisions of the Supreme Court entirely independent of its nonconforming character. In Sawdey Liquor License Case, 369 Pa. 19, and Borden Appeal, 369 Pa. 517, 522, the court said:

"Once it is decided that the apartment building comes within the special exception provided in the ordinance, . . . anything which logically accompanies the normal operation of an apartment building must also be authorized. And we cannot conceive of facilities more indispensable to an apartment dweller than quar-

ters for his automobile which he needs in travelling to and from the apartment, and a dining room in which to eat."

The principle announced by Mr. Justice Stern was followed in Kellman v. McShain, 369 Pa. 14, and Firth v. Scherzberg, 366 Pa. 443. It was further amplified in Davis Appeal, 367 Pa. 340, in which it was held that the interior of the nonconforming building could be reconstructed so as to contain more apartments than those originally contained irrespective of any zoning regulation.

Furthermore, any element of nuisance appearing in the case would be beyond the jurisdiction of the zoning board of adjustment to consider and likewise beyond the jurisdiction of this court to consider and determine on appeal. This results from the language of the enabling act of May 6, 1929, P. L. 1511, which vests in this court the right to affirm, reverse or modify the decision of the zoning board of adjustment appealed from. As was stated in Floersheim Appeal, 348 Pa. 98, 101:

"Appellants have argued that the manner in which the property has been used amounts to a nuisance and, therefore, their property rights are unreasonably endangered by the issuance of this permit. With this proposition we are not now concerned. If, in fact, the use of the premises does constitute a nuisance, appellants have a remedy in the proper form."

Summarizing the foregoing and applying their principles to the analysis of the present case, two things appear:

1. That the nonconforming right to maintain a sign is not limited to the exact kind, style and location of the sign existing prior to August 10, 1933, and

2. That such changes in the sign are de minimis and will not justify a board in refusing to approve of such sign.

As was pointed out in Lord Appeal, 368 Pa. 121, the right to maintain a structure on one's property is limited only to such as will not affect the health, welfare, safety and morals of the community and will not, in and of itself, be a public nuisance. In Lord's Appeal the court held, citing a large number of previous cases, that aesthetic considerations will not justify an otherwise unreasonable exercise of the zoning power, and inasmuch as the maintenance of the sign here does not affect the health, welfare, safety and morals of the community and falls directly within the language of the zoning ordinance, permitting the continuance of such use within reasonable limitations, it is clear that the location of the sign, the material from which the sign is constructed and the manner of lighting are things with which zoning has nothing to do and that once the right to maintain the sign is admitted, the right to do the other things objected to in this case accrues as a matter of law under the foregoing decisions of the Supreme Court of Pennsylvania.

The function of this court in dealing with this problem is to determine whether or not the zoning board of adjustment abused its discretion in refusing to issue the certificate authorizing a permit in the present case. An abuse of discretion is either predicated upon the conduct and motivation of the zoning board of adjustment or upon its making a mistake as to the law applicable to the facts before it. Either is an abuse of discretion. In the present case the board misconceived its powers and misconstrued the ordinance in refusing the permit. We have examined the cases cited by counsel for the city and we think they are distinguishable. In the Darling case there was the substitution of a tailor shop for a real estate office. Munhall Borough Appeal, 168 Pa. Superior Ct. 299, we find was reversed, or at least modified by Lord Appeal, 368 Pa. 121.

The decision of the zoning board of adjustment must be reversed and the record remitted to the board of adjustment with direction that a certificate be issued directing the division of zoning to issue a permit approving the erection of the sign here in question.

Appellant has presented requests for findings of fact and conclusions of law, all of which we think are substantially answered and covered in this opinion.

Wherefore, we make the following

### Order

And now, November 22, 1952, it is ordered and decreed that the action of the zoning board of adjustment is hereby reversed and the record is hereby remitted to the board with instruction that a certificate be issued directing the division of zoning to issue a permit approving the erection of the sign here in question.