**G. P. HARDY, Appellant,**

v.

**John G. CALHOUN, Appellee.**

No. 7611.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 15, 1964.

James W. Hughes, Texarkana, for appellant.

C. B. Wheeler: Wheeler, Watkins, Hubbard & Patton, Texarkana, for appellee.

DAVIS, Justice.

This is a zoning case between appellant, G. P. Hardy, and appellee, John G. Calhoun, who wants to build a tennis court in

the City of Texarkana, Texas. The house and lot of appellee is in a First Dwelling House District within the city. Only one of the neighbors of appellee does not want the tennis court. The City Engineer advised appellee that a permit was not necessary, and he commenced building the tennis court. Appellant then appealed to the Board of Adjustments from the decision of the City Engineer. The Board of Adjustments sustained the decision of the City Engineer, which was in turn sustained by a judgment of the District Court. Appellant has perfected his appeal, and brings forward only one point of error.

By the point of error, appellant says the Board of Adjustments of the City of Texarkana, Texas, erred in finding a tennis court is an accessory use customarily incident to a dwelling within the City of Texarkana, Texas, and the District Court erred in holding that the decision of the Board of Adjustments was supported by substantial evidence.

Sec. 30.5 of the Code of Ordinances of the City of Texarkana, Texas, reads, in part, as follows:

"Section 5. District 'A'. (First Dwelling House District).

"Use Regulations

"In District 'A' no building, structure, land or premises shall be used, and no building or structure shall be hereafter erected, moved, constructed or altered except for one or more of the following uses:

"1. Dwellings.

"2. Churches and community buildings.

"3. Public parks and playgrounds, golf courses, public recreation buildings and public museums.

"4. Public schools, elementary and high, and private schools with curriculum equivalent to that of a public, elementary, or high school, and institutions of higher learning, including stadiums and dormitories in conjunction, if located on the campus.

"5. Municipal buildings, public libraries, police stations and fire stations.

"6. Railroad passenger stations and railroad right of ways, not including railway yards.

"7. Farms, nurseries, truck gardens and greenhouses limited to the propagation and cultivation of plants.

"8. Telephone exchanges and equipment.

"9. Accessory uses, customarily incident to the above uses and located on the same lot therewith, not involving the conduct of a retail business;

"(a) the term accessory use shall include customary home occupations such as the office of physician, dentist, surgeon, dressmaker, musician, or artist under the following restrictions:"

Under Sec. 30–3, Definitions, Subsection 1, an accessory building or use is defined as "a subordinate building, a portion of the main building, or a use customarily incident to and located on the same lot occupied by the main building or use of the property." Actually, a tennis court is not a building. It could be called a structure, but it is located on the same lot as the residence, and will be used in connection therewith. All persons owning property within 200 feet of appellee gave their oral or written notice that they had no objections to the tennis court, except appellant.

At the hearing before the Board of Adjustments it was shown that appellee was a doctor and lives with his wife and four children, ages 3½ to 14 years, and the tennis court was to be used by them, solely for their own private use, recreation and

enjoyment in connection with and as a part of their residence. The evidence shows that there are two other tennis courts within the City of Texarakana. Just what constitutes a use, "customarily incident" to the use of the property depends largely upon the thinking of the appellee. There is nothing in the Ordinance that makes the playing of tennis illegal, erroneous, contrary to law, or a nuisance. It is merely a purpose to create a place for recreation by the appellee, and his family. There have been no tennis court cases decided by the courts of Texas. But we must look to the thinking of the individual. In doing so, we must decide whether or not the actions anticipated by them are arbitrary, capricious, an abuse of discretion, illegal, erroneous, contrary to law, or constitutes a nuisance. Such is not the case. Tennis is a famous game. It is usually played outside on a tennis court that is made of concrete slab with a mesh across the center. It affords the players much exercise, and we can assume that according to the appellee, it could be a healthy sport. It provides him a place to keep his children at home and supervised, and makes a wholesome family recreation. The Zoning Ordinance does not prevent a private tennis court, swimming pool, basket ball court, volley ball court, croquet court, barbecue pit, or similar use. It doesn't make any difference whether the areas are residential, business or industrial. Appellant relies most heavily upon the case of Appeal of Lord, 168 Pa.Super. 299, 77 A.2d 728, by the Superior Court of Pennsylvania. The Supreme Court of Pa., in Appeal of Lord, 368 Pa. 121, 81 A.2d 533, reverses the Superior Court decision and directed the Board of adjustments to issue the permit to build an antenna. In this case, there is an excellent discussion of the fundamental rights of property owners within the United States. It pointed out that the principle of the sanctity of private property underlies several articles of Magna Carta, and then went on to say:

"In the Industrial Age the pendulum slowly but surely turned backwards.

Gradually the landowners' rights became less absolute, and the maxim of the Roman Law (Sic utere tuo ut alienum non laedas) to so use your own land as not to injure another, was adopted and became part of the common law of England. This endless swaying struggle between the rights of a Sovereign and the rights of an individual was resolved in America by allotting to each certain rights, powers and boundaries. Both our Federal and State Constitutions provide for and guarantee to every citizen certain unalienable rights and liberties; and with respect to property limit the paramount right of the Sovereign State to take an owner's land for a public use only, and even then, only if it pays the owner just compensation. Fifth and Fourteenth Amendments to the Constitution of the United States; Article I, § 10; Article XVI, § 8, Constitution of Pennsylvania, P. 5.

"More recently, i. e., in the last 25 years, the swing of the pendulum in favor of sovereignty has been precipitated because of wars, a depression, and the complexities of modern life. This trend has taken the form of planning commissions and zoning boards, which have become very fashionable; and their acts, ordinances or regulations have tended to further restrict an owner's right in his own land.

"While it is obviously true that the ancient adage of Coke (originally found in Staumford's 'Pleas of the Crown' in 1557), that 'A man's house is his castle', is, in the words of Rudyard Kipling 'One with Nineveh and Tyre', an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction

or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property. White's Appeal, 287 Pa. 259, 134 A. 409, 53 A.L.R. 1215; Taylor v. Moore, 303 Pa. 469, 154 A. 799; Kline v. City of Harrisburg, 362 Pa. 438, 451, 68 A.2d 182; Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322; Jennings' Appeal, 330 Pa. 154, 198 A. 621; Ward's Appeal, 289 Pa. 458, 137 A. 630; Bryan v. City of Chester, 212 Pa. 259, 61 A. 894; Taylor v. Township of Haverford Township, 299 Pa. 402, 149 A. 639; Perrin's Appeal, 305 Pa. 42, 48, 156 A. 305, 79 A.L.R. 912; Euclid Village v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; St. Louis Poster Advertising Co. v. City of St. Louis, 249 U.S. 269, 39 S.Ct. 274, 63 L.Ed. 599; Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156.

"Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed. Lukens v. Zoning Board of Adjustment, [367] Pa. [608], 80 A.2d 765; Kline v. City of Harrisburg, 362 Pa. 438, 451, 68 A.2d 182."

The Supreme Court of Pennsylvania found no prohibition under the zoning ordinance to prevent the building of the antenna. We find that there is no provision in the Texarkana Zoning Ordinance to prevent the building of a tennis court.

In the case of Thomas et al. v. Zoning Board of Adjustment of City of University Park et al., Tex.Civ.App., 241 S.W.2d 955, N.W.H., the people were interested in building a private swimming pool. It seemed that this case is controlling of the issues presented here. The proof in that case showed two other private swimming pools had been approved in University Park. The court did not consider the number of pools, but considered the question of whether or not the pool was such accessory or subordinate use of the home as naturally appertains thereto and customarily follows as a mere incident to the use and enjoyment of the premises. The court held so, as a matter of law, and stated as follows:

"After careful consideration, we are of the opinion that appellants' first four points must be sustained. We conclude that appellants, as a matter of law, are entitled to construct and use the proposed private swimming pool, solely for their own private recreation, enjoyment and convenience in connection with and as a part of their use of their homestead, under said Zoning Ordinance. We hold that the proposed use of appellants' premises is an accessory or subordinate use permitted by the Zoning Ordinance; that the proposed swimming pool is an accessory structure permitted by said ordinance and that its construction and use for said purposes, in connection with and as a part of their use of the homestead, is not prohibited by said ordinance."

It will be noted there was testimony that there is a trend toward better homes having *tennis courts,* as well as barbecue pits. The court went on to say:

"The foregoing statements and decisions are referred to for the purpose of showing how far the law has gone, in homestead cases, in holding that use of premises, comparable to the use which the Thomases desired to make of their premises, have been recognized as proper uses to impress lots with the

homestead character. The right to privately swim on one's own premises is not different from the right to *play tennis* or croquet, or operate a barbecue pit there. Since the ordinance designates the use of the property as residential and contains no provision against swimming, and since none arises by necessary implication, we think appellants' common law rights to engage in such an activity in the use of their home is not limited by the ordinance. Furthermore, the right to so use the premises is granted by paragraph 4 of Section 4, which authorizes such accessor or subordinate use of the home as naturally appertains thereto and customarily follows as a mere incident to the use and enjoyment of the premises and building for a 'single-family dwelling.' The primary intent was to allow subordinate uses that did not involve public or business activities. It is significant that the only specific limitation on the general authority to use the premises for purposes accessory or subordinate to its use as a single-family dwelling is against using same for commercial purposes. The premises are occupied primarily as a one-family dwelling. The use of the premises for swimming is an accessory or subordinate use, naturally appertaining thereto, and one which customarily follows as a mere incident to the use and enjoyment of the premises and building as a single-family dwelling." (Emphasis added.)

The point of error is overruled. The judgment of the trial court is affirmed.