# Drago et al. v. Norristown Borough Board of Adjustment

*A. Benjamin Scirica,* of *Smillie & Bean,* for appellants.

*Stewart Nase,* for appellee.

CORSON, J., February 8, 1945.—In 1933 the Borough of Norristown enacted a zoning ordinance. This ordinance, after setting forth the permitted uses in the various zones created thereunder, provided in section 44E-10 as follows:

"The Board, may, after three (3) years from the date of the passage of this Ordinance, upon the presentation of a petition signed by the owners in interest and numbers of sixty (60) per cent of all property within two hundred (200) feet from any premises on which a non-conforming use exists, order the discontinuance and revocation of the Certificate of Occupancy of such non-conforming use in any district. However, a public hearing shall be held, written notice of which shall be given to parties affected, ten (10) days prior to the hearing. Such order to take effect six (6) months after its service on the parties affected."

At the time of the enactment of the ordinance, Frank Puleo was the owner and operator of a junk yard in a zone where such operation was not permitted under the terms of the ordinance. Puleo's junk yard was recognized as a nonconforming use under such ordinance and apparently a certificate to that effect was given to him by the zoning authorities. Puleo continued

to operate the junk yard. In May of 1944, a petition was filed by adjoining property owners under the provisions of section 44E-10 of the zoning ordinance, the required number of owners in interest seeking an order of discontinuance and revocation of said certificate of nonconforming use. After due notice, hearings were held before the board of adjustment. After consideration by the board, the prayer of the petition was refused.

Under the provisions of the Act of June 29, 1923, P. L. 957, sec. 7, the aggrieved petitioners within the time provided filed a petition in this court asking leave to appeal the decision of the board and setting forth the grounds upon which petitioners allege such decision to be illegal. Such appeal was allowed, whereupon the record was eventually brought before this court for review. The record was ordered for a hearing before the court in banc, and the court, feeling that no further testimony was necessary for proper disposition of the matter and counsel for neither of the parties desiring to present any further testimony to the court, the record, after argument, is now before this court for review.

In paragraphs 8, 9, 10, and 11, petitioners allege that the decision of the board is illegal for the following reasons: (1) That it is an arbitrary and irrational exercise of power having no substantial relation to the public health, morals, safety, or general welfare of the community; (2) that the decision of the board shows bias, prejudice, and a failure to consider the testimony presented at the hearings; (3) that the board abused its discretion in refusing to discontinue the nonconforming use by Puleo of his land; (4) that the action of the board was illegal, unreasonable, confiscatory, and unconscionable.

Puleo contends not only that the decision of the board was just and legal and that it has many of the characteristics of the decisions of Solomon, but further con-

tends that the portion of the zoning ordinance under which the board was asked to act is unconstitutional. It is difficult to see, however, how the constitutionality of this particular section can be raised in this proceeding by Puleo because of the fact that the board's decision was in Puleo's favor, and, since nothing is taken away from him by such decision, he certainly cannot be heard at this time to contend that his property was taken without due process of law, etc. Since appellants rely mostly upon allegations which are merely conclusions of the appellants, it is necessary to go into the testimony to see whether or not such conclusions are warranted in fact.

An examination of this testimony discloses that while Puleo did perhaps violate other ordinances of the borough and perhaps the law as to nuisance by more or less blocking the use of an alley adjoining his property, yet, as the board properly decided, such acts had no application to the question of the propriety of his use of his own property as a junk yard.

Petitioners by their testimony would have the board find that the junk yard was more or less of a nuisance in the neighborhood because it harbored rats, snakes, and skunks. It is difficult to see how the capture of one rat six years ago in a petitioner's cellar is sufficient to sustain the charge upon the rat question. As to snakes, one petitioner testified that he saw snakes leaving the junk yard to live upon the premises of petitioner. Apparently, the premises of such petitioner were more attractive to the snakes than their former quarters in the junk yard. No doubt the board had difficulty in believing that snakes in quantity would be allowed by petitioner to come from the junk yard directly upon petitioner's property without any effort being made by petitioner to destroy them. Certainly no St. Patrick was reported in the neighborhood driving snakes from the junk yard toward petitioner's property. On the

other hand, it might be argued that the junk yard was so badly run that even snakes refused to continue to reside there.

As to the question of skunks, petitioners must realize that these animals are clean living, friendly members of the animal kingdom who are not accustomed to living under conditions of filth. If any of the petitioners had ever lived in the country they would have found that some of the best houses have skunks under their porches and upon occasion when a strange dog wanders into the neighborhood the householder sometimes thinks that the skunk family under his particular porch is large and powerful. At such times the skunk apparently thinks that the best defense is the most offensive.

Petitioners contend that the decision of the board was illegal because the word "may" as used in section 44E-10 must be construed as meaning "shall". If this contention is to be sustained, the only purpose of the hearing before the board would be to determine whether or not the required number of property owners within the 200-foot radius had signed the petition. In support of this contention, petitioners cite the case of Hotel Casey Co. v. Ross et al., 343 Pa. 573 (1942). At page 579 Justice Parker, speaking for the court, said, inter alia: ". . . where a statute directs the doing of a thing for the sake of justice, the word 'may' means the same thing as the word 'shall'."

We do not feel that the ruling in that case applies in the present case. We feel that the word "may", as used in the zoning ordinance, assuming this section of the ordinance to be constitutional, vests discretion in the board to revoke the certificate of nonconforming occupancy or not depending upon the facts in each particular case. Let us assume that a large apartment house existed at the time of the passage of the zoning ordinance and that such apartment house was a nonconforming use in that particular zone. If petitioners' contention is correct, such a property would become less

than worthless at the end of three years if the proper number of adjoining property owners went through the formality of filing a petition with the board of adjustment.

Certainly these appellants cannot contend that their property has been taken because of the refusal of the board to end a nonconforming use which was such use prior to the enactment of the zoning ordinance. Certainly such petitioners cannot successfully contend that any property right has been taken from them by the failure of the board to act.

Most of these cases seem to arise where the board refuses to allow a property to be used in violation of the zoning ordinance where such new use is a violation of such ordinance. In the present case, however, the use by Puleo of his property antedated the ordinance by several years and the adjoining property owners have been placed in no worse position by the passing of the ordinance, or the failure of the board to act thereunder, than if the ordinance had never been passed.

While it is true that the appellate courts have become more liberal in upholding the constitutionality of zoning ordinances (see White's Appeal, 287 Pa. 259 (1926), and cases therein cited), yet no case seems to have gone so far as to sustain an ordinance, in effect legislating out of existence an existing legal business. Of course, if such business constitutes a nuisance there is a remedy for the adjoining property owners, but not under the zoning ordinance.

The fact that the present ordinance allows a grace period of three years does not affect this general principle of law. The board of adjustment in the present case is a properly constituted official body which has acted after considering all the facts and circumstances of the particular case before it. In such a case the courts should not reverse the decision of such body except where there is a manifest and flagrant abuse of

discretion: Liggett's Petition, 291 Pa. 109, 117 (1927) ; Pennsylvania Mutual Life Ins. Co. v. Cuyler et al., 283 Pa. 422, 429 (1925) ; Ward's Appeal, 289 Pa. 458, 461 (1927).

While the operation of this yard may offend the aesthetic sense of petitioners, yet this alone is not sufficient to justify action by a board of adjustment. See Liggett's Petition, supra, at page 117.

An examination of the premises in question by the writer of this opinion discloses that a large fence at present exists on the Marshall Street side of the property so that nothing can be seen from that particular side. Certain other conditions complained of by petitioners seem to have been remedied by Puleo, possibly as a result of this litigation, so that petitioners cannot say that their efforts to improve the situation have not borne some fruit.

While this neighborhood seems to be improving, yet an examination discloses, as contended by Puleo, that there are several junk yards, or at least yards containing junk, such as old iron, junked automobiles, tires, etc., in the immediate neighborhood of the Puleo property. Whether or not such uses were nonconforming uses at the time of the passage of the ordinance of course does not appear. An examination of the record in our opinion does not support the contention of appellants that the board was biased in its decision or that it abused the discretion which we feel it was bound to exercise in passing upon appellant's petition.

And now, February 8, 1945, for the reasons given, the appeal is dismissed and the action of the board of adjustment is affirmed at the costs of appellants. An exception is allowed to appellants.