Landau Advertising Co., Inc. *v.* Zoning Board of Adjustment (et al., Appellant).

Argued November 14, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James L. Stern,* Deputy City Solicitor, with him *Gordon Cavanaugh* and *Richard H. Markowitz,* Assistant City Solicitors, and *David Berger,* City Solictor, for appellant.

*Marvyn Gould,* with him *Joseph X. Yaffe,* and *Yaffe & Gould,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 17, 1957:

This is an appeal from the decision of the court below reversing an order of the Zoning Board of Adjustment. The appeal was taken by the Board itself and we permitted the City of Philadelphia to be substituted as appellant.[1]

Plaintiff is an outdoor advertising company which leased the roof area above a drugstore located in an area zoned "A" Commercial in the City of Philadelphia. Plaintiff filed an application with the Zoning Division of the Department of Licenses and Inspections for a permit to erect on the leased premises a large illuminated billboard fifteen feet high and forty-two feet wide for general advertising purposes. The Zoning Division denied the application and, on appeal, after a hearing on the merits, the Zoning Board of Adjustment refused plaintiff's request. The Board found as

---

[1] See *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 170 A. 867, to the effect that the Board of Adjustment has no standing to appeal from a final order of the court of common pleas entered on an appeal from a decision of the Board. Compare *Perelman et al. v. Yeadon Borough Board of Adjustment et al.,* 144 Pa. Superior Ct. 5, 18 A. 2d 438.

facts that the area in which the sign was to be built was partly residential and partly commercial, that the proposed use was not an accessory use, that proper and orderly development of the neighborhood could best be obtained by limiting the area to accessory signs advertising business conducted on the premises, that the sign would be a distraction to motorists, and that the health, morals, safety and general welfare of the immediate neighborhood would be affected if permission were granted to erect the sign for general advertising, not accessory to any business at this location. Thereupon the plaintiff took its case to the Court of Common Pleas No. 1 of the County of Philadelphia which, without taking additional testimony, reversed the action of the Zoning Board and directed that a permit be issued.[2] The court held that plaintiff's billboard was permissible as an "accessory use" which is defined in Section 2(23) of the Philadelphia Zoning Ordinance as "a use subordinate to the main use on the lot and customarily incidental to the main use". The court reasoned that the use of the roof of a business building for the erection of a sign thereon is "customarily inci-

---

[2] With respect to cities of the first class, Section 8 of the enabling Act of May 6, 1929, P. L. 1551, 53 PS §3829, permits persons aggrieved by the decision of the Board of Adjustment to petition the court of common pleas for a writ of certiorari. If the court allows such writ, it may then take additional testimony and may reverse or affirm, wholly or partly, or may modify the decision brought up for review. Where no additional testimony is taken in the court of common pleas, the scope of review for that court is whether the Board of Adjustment was guilty of a manifest abuse of discretion or an error of law: *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 41 A. 2d 744; *Perelman et al. v. Yeadon Borough Board of Adjustment et al.*, 144 Pa. Superior Ct. 5, 18 A. 2d 438. See Concurring Opinion by Mr. Justice BELL in *Walker v. Zoning Board of Adjustment (et al.)*, 380 Pa. 228, at p. 234, 110 A. 2d 414.

dental" to its main use as a business building, and that this does not turn on the kind of business conducted in the building. This appeal was then taken.[3]

Section 5 (3) of the Philadelphia Zoning Ordinance, which is a section of general application, provides that: "In each district, only such uses and uses accessory and incidental thereto, as are hereinafter specified, will be permitted.". Section 16 of the Ordinance sets forth the uses allowed in an "A" Commercial District. Billboards are not among these enumerated uses. The only signs expressly permitted by Section 16 are small professional signs, bulletin boards for churches, and signs advertising the sale or rent of real estate on which they are located provided such signs do not exceed twenty-five square feet in area. Section 16 (27) of the Ordinance permits "Accessory uses customarily incidental to any of the above permitted uses.". In *Silver v. Zoning Board of Adjustment*, 381 Pa. 41, 112 A. 2d 84, we held that the failure of the Philadelphia Zoning Ordinance to enumerate signs among the permitted uses in an "A" Commercial District does not allow such use, and that the only signs permitted in

---

[3] Since the enabling Act of May 6, 1929, P. L. 1551, 53 PS §3822 et seq., dealing with zoning ordinances of cities of the first class, does not provide for any appeal from the court below, our review is as on certiorari in its broadest sense, and we examine the record to see whether there is evidence to sustain the court's findings and whether the proceeding is free from a violation of law and any manifest abuse of discretion. This is so whether or not testimony on the issue was taken in common pleas court. The scope of our inquiry is determined by the breadth of the certiorari issued by this Court and not by the power exercised by the court below: *Food Corporation v. Zoning Board of Adjustment (et al.)*, 384 Pa. 288, 293, 121 A. 2d 94; *Schmidt v. Philadelphia Zoning Board of Adjustment*, 382 Pa. 521, 525, 114 A. 2d 902; *Walker v. Zoning Board of Adjustment (et al.)*, 380 Pa. 228, 230, 110 A. 2d 414; *Rolling Green Golf Club Case*, 374 Pa. 450, 458, 97 A. 2d 523.

such a zoned district are those specifically enumerated by Section 16 of the Ordinance and those which could properly be classified as an accessory use.

Plaintiff maintains that its sign constitutes such an accessory use. The City, on the other hand, contends that an accessory use sign must advertise activities conducted on the premises where the sign is located, that since this sign which plaintiff proposes to erect on the space which it leased above the drugstore will be devoted to general advertising purposes, it is a non-accessory sign and therefore not permitted under the Philadelphia Zoning Ordinance. We agree with the City's contention. In *Silver v. Zoning Board of Adjustment,* supra, an operator of a paint store leased a vacant lot and erected thereon a large billboard, advertising his paint business and directing prospective customers to its location which was one block away. No aspect of the advertised business was conducted on the premises where the sign was placed. This Court held that the sign was not an accessory use. We said at p. 43: "There is no question that a zoning regulation is valid if it is necessary for the preservation of public health, safety, morals or general welfare: Medinger Appeal, 377 Pa. 217, 221, 104 A. 2d 118. The regulation of billboards is generally accepted as a legitimate exercise of the police power by a zoning board: Liggett's Petition, 291 Pa. 109, 139 A. 619; McQuillin, Municipal Corporations (3rd Ed.), Vol. 7, sec. 24.380. . . .". It is true that in the *Silver* case the sign in question was the only use made of the vacant lot and therefore it was a primary rather than an accessory use. However, if a billboard advertising a local business cannot be considered an accessory use if it is located on a lot one block away from the business, then it would seem that a billboard devoted to general advertising

without reference to the businesses situated in the immediate community should not be so considered. Moreover, we think it clear that the leasing of a roof of a drugstore to an outdoor advertising company for the purpose of erecting a billboard thereon for advertising in general, is not "customarily incidental to the main use" to which the premises are being devoted. General outdoor advertising involves the conduct of a business separate and distinct in itself: *Liggett's Petition,* 291 Pa. 109, 139 A. 619. Plaintiff's contemplated use of the roof bears no relationship whatever to the occupancy of the building on the subject premises. Since the use is not one customarily incidental to the operation of a drugstore, it is not an accessory use and therefore it is forbidden by the Ordinance.

Plaintiff also contends that since the erection of a similar sign by the owner of the drugstore to advertise his business conducted on the premises would be permitted as an accessory use, a refusal to permit such a sign by a lessee who seeks to make a general advertising use thereof, is a restriction which bears no substantial relation to public health, safety, morals or general welfare, and hence is unconstitutional. In 58 Am. Jur., §74, pps. 988, 989, it is said: "A zoning ordinance which excepts from a general prohibition of billboards any which refer to a business conducted on the property on which they stand is not illegally discriminative. As to this matter, it has been declared that there is no illegal discrimination in legislation limited to a particular class where there is between those in the class and those whom it leaves untouched some natural and substantial difference germane to the subject and purposes of the legislation. Neither does such an exception violate a statutory requirement that zoning regulations shall be uniform for each class or kind of buildings or structures throughout each district.".

In *Criterion Service, Inc. v. City of East Cleveland,* 88 N.E. 2d 300, appeal dismissed, 152 Ohio St. 416, 89 N. E. 2d 475, it was held that a zoning ordinance which prohibited advertising signs and billboards except as they might be displayed as an accessory use to the business conducted on the property was constitutional, the court pointing out that outdoor advertising is a business that is subject to classification as are all other commercial enterprises. In *People v. Sterling,* 267 App. Div. 9, 45 N. Y. S. 2d 39, the validity of a statute prohibiting advertising signs in a public park, except where they relate to a business conducted on the premises where erected, was likewise sustained. In *Murphy, Inc., et al. v. Town of Westport et al.,* 131 Conn. 292, 40 A. 2d 177, the court, in an extensive opinion which considered all the authorities, upheld against constitutional attack a zoning ordinance which prohibited billboards or advertising signboards in business districts except as they refer to business conducted on the property on which the billboard stands. In *United Advertising Corporation v. Borough of Raritan,* 11 N. J. 144, 93 A. 2d 362, the Supreme Court of New Jersey considered the validity of a zoning ordinance which prohibited any sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than upon the premises. The Court, speaking through Mr. Justice BRENNAN (now of the United States Supreme Court) rejected plaintiff's argument that the ordinance constituted unlawful discrimination by excluding advertising signs in all districts while permitting such signs directing attention to businesses on the premises, saying at pps. 365, 366: "The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a busi-

ness sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff's placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the ordinance provides is that this business shall not to that extent be allowed in the borough. It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction. Thomas Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472 (1917) ; St. Louis Poster Adv. Co. v. City of St. Louis, 249 U. S. 269, 39 S. Ct. 274, 63 L. Ed. 599 (1919) ; Packer Corp. v. State of Utah, 285 U. S. 105, 52 S. Ct. 273, 76 L. Ed. 643 (1932). See also Murphy, Inc. v. Town of Westport, 131 Conn. 292, 40 A. 2d 177, 156 A.L.R. 568 (Sup. Ct. Err. 1944) ; General Outdoor Adv. Co., Inc. v. Department of Public Works, 289 Mass. 189, 193 N. E. 799 (Sup. Jud. Ct. 1935), appeals dismissed General Outdoor Advertising Co. v. Hoar, 296 U. S. 543, 56 S. Ct. 95, 80 L. Ed. 385 (1935), Id., 297 U. S. 725, 56 S. Ct. 495, 80 L. Ed. 1008 (1936).".

Plaintiff also relies on the case of *Prospect Park Borough v. McClaskey,* 151 Pa. Superior Ct. 467, 30 A. 2d 179, but in that case the sign was on the same tract of ground as the business to which it related.

The order of the court below is reversed.

———

DISSENTING OPINION BY MR. JUSTICE BELL:
President Judge KUN in his able opinion said:
"Appellant is an outdoor advertising company

which leased the roof area above a drugstore located at the Southwest corner of Castor Avenue and Cottman Street. The premises are zoned 'A' Commercial.* It was the intention of applicant to erect a roof sign thereon. The application for a sign permit was refused by the Department of Licenses and Inspections, and on reference to the Zoning Board, the Board also refused the application.

"The evidence before the Board disclosed that the area involved is highly commercial,* with a Lit Brothers Department Store, a Food Fair Market and a gasoline station located on the other corners of the intersection. The Board found as facts that the proposed use was not an accessory use and that to permit the sign to be erected would not further the orderly and proper development of the area. The Board also found that such a sign would be a distraction to motorists and that the general health, welfare, safety and morals of the neighborhood would be affected if the sign were permitted to be constructed.

"The argument of counsel for the Board is that in an 'A' Commercial district such a sign can only be permitted if it is an 'accessory use', which is defined in the Zoning Ordinance as a use 'subordinate to the main use on the lot and customarily incidental to the main use.' The argument is that since the main use of the property is a drugstore, construction of a sign by an advertising Company is not accessory to the use of the property as a drugstore. *The City readily admits that if an application had been made by the owner of the drugstore to construct a sign, the Board would have had to grant it."***

---

* The photographs clearly demonstrated that this was unquestionably a commercial area.

** Italics throughout, ours.

Section 16 of the Philadelphia Zoning Ordinance sets forth the uses allowed in and about "a commercial district". Billboards are not among these enumerated uses. Section 16 (27) of the Ordinance permits "accessory uses customarily incidental to any of the above permitted uses."

There is no assertion or pretense that the sign will affect (a) the public's rights to light and air, or (b) its health or morals. The conclusion of the Board that the sign would not further the orderly development of the area, even if correct, furnishes no legal basis to sustain the Ordinance. The conclusion of the Board that the sign will distract motorists is refuted by the admission of the City that the sign would be permissible and valid, and would not distract or affect motorists if the wording of the sign advertised the owner or his merchandise—a so-called accessory use.

The Zoning Ordinance as interpreted by the Board is but another example of the mania which is sweeping America, particularly in many zoning boards and alphabetical agencies, to regulate and minutely control the property, the business affairs and the lives of all our citizens without any regard for the Constitution of Pennsylvania or the Constitution of the United States, which many of them have apparently never read.*

The people of Pennsylvania ordained and proclaimed in their Constitution that "all men have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property . . .".

---

* See particularly Art. I, §1, §9, §10, of the Constitution of Pennsylvania; Fifth and Fourteenth Amendments of the Constitution of the United States.

The people of the United States ordained and established our Constitution "in order to secure the blessings of liberty to ourselves and our posterity".

It seems to have been forgotten that our forefathers crossed an unknown ocean and fought and bled and died for the freedoms which in these days are being constantly obliterated—freedom of the individual and freedom from Governmental interference, which inspired that immortal document, the Declaration of Independence.

I will assume arguendo that the erection of this sign is not an accessory use within the meaning of the Ordinance. However, there is a very important reason why I believe the Order of the lower Court should be affirmed, namely, the Ordinance constitutes an arbitrary, discriminatory and unconstitutional violation of the landowner's fundamental rights of property.

The touchstone of this case is the admission by the City that the owner of the drugstore could validly construct a sign of the size in question, if it advertised the drugstore or an article sold therein. In other words, if the sign read "Camels Sold Below", the sign would be permissible and valid; but if the sign read "Camels Sold a Block Away" it would not be permissible or valid. If the sign read "Buy Old Granddad Below and Live to be Eighty", it would be valid; but if the sign said "Drive Safely and Live Longer"* it would not be permissible or valid. Such a distinction, from a constitutional viewpoint, appears to me to be ridiculous. The wording of a sign, unless it is immoral or against public policy, has no substantial or rational relation to, and is not necessary for the health or safety or morals of the public.

---

* Whether inserted by the owner or by his lessee, the Chamber of Commerce.

There is no doubt that a zoning regulation is valid if it is clearly necessary for the preservation of public health or safety or morals. In *Seattle Trust Co. v. Roberge*, 278 U.S. 116, the Court said:

". . . Zoning measures must find their justification in the police power exerted in the interest of the public. Euclid v. Ambler Realty Co., supra, 387. 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.' Nectow v. Cambridge, supra, p. 188. *Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities.*\* Lawton v. Steele, 152 U.S. 133, 137. Adams v. Tanner, 244 U.S. 590, 595. Meyer v. Nebraska, 262 U.S. 390, 399-400. Burns Baking Co. v. Bryan, 264 U.S. 504, 513. Norfolk Ry. v. Public Service Comm'n., 265 U.S. 70, 74. Pierce v. Society of Sisters, 268 U.S. 510, 534-535. Weaver v. Palmer Bros. Co., 270 U.S. 402, 412, 415. Tyson & Brother v. Banton, 273 U.S. 418, 442."

There is no doubt that the reasonable and non-discriminatory regulation of billboards by Council or by a zoning board may be a legitimate exercise of the police power depending upon certain factors such as the location of the billboard, its size, strength and safety, and the area involved. See *Liggett's Petition*, 291 Pa. 109, 139 A. 619; *Cusack Co. v. Chicago*, 243 U.S. 526; *St. Louis Poster Advertising Co. v. St. Louis*, 249 U.S. 269. Cf. also *Village of Euclid*, 272 U.S. 365; *Rolling Green Golf Club Case*, 374 Pa. 450, 97 A. 2d 523;

---

\* Italics ours.

*Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118; *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *White's Appeal,* 287 Pa. 259, 134 A. 409. But unless the wording of the billboard is immoral or against public policy, *the wording* cannot possibly have any substantial and rational relation to the health or safety or morals of the public, and an ordinance based on the wording of a sign, no matter how cleverly phrased, is an arbitrary, and in this case a discriminatory, violation of a landowner's constitutional rights of property!

In *Medinger Appeal,* 377 Pa., supra, a zoning ordinance which provided for a sliding scale of minimum habitable floor space which varied in different districts of the Township, was held to be unconstitutional. In *Lord Appeal,* 368 Pa., supra, this Court permitted the erection by an amateur radio operator of a large 32 feet high antenna mast in the backyard of his home which was in a zoned area.

In *Rolling Green Golf Club Case,* 374 Pa., supra, the Court sustained the right of a property owner to build a road over his own land to connect with a public road. The Court held this was a fundamental inalienable right, and that a zoning ordinance which attempted to restrict the use of property in such a way as to prohibit such roads was an arbitrary and unreasonable intermeddling with rights of property and was unconstitutional.

In the leading case of *White's Appeal,* 287 Pa. 259, 134 A. 409, the Court held unconstitutional a zoning ordinance which provided that the set-back of the front wall of a building cannot be nearer to the street line than the distance established by the majority of buildings already constructed at the date of the ordinance. The Court said that such an attempted regulation under the police power "would be to sweep away consti-

tutional guarantees on the ownership of property. It is regulation run mad."

In *Medinger Appeal*, 377 Pa., supra, the Court, quoting from *Lord Appeal*, said:

" '. . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property: [citing cases].

. . .

" 'In White's Appeal, 287 Pa., supra, . . . The Court said (page 265) : '. . . all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations:

Welch v. Swasey, 214 U.S. 91; Coppage v. Kansas, 236 U.S. 1, 18; Boyd v. United States, 116 U.S. 616, 635; St. Louis Poster Advertising Co. v. St. Louis, 249 U.S. 269; Cooley on Constitutional Limitations, 768. While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 416. . . . "To secure their property was one of the great ends for which men entered society. The right to acquire and own property, and to deal with it and use it as the owner chooses so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty,—an expression of his freedom,—guaranteed as inviolate by every American bill of rights": Spann v. Dallas, 111 Tex. 350, 235 S.W. 513. . . .' "

The very question here in issue was decided by the Superior Court in *Prospect Park Borough v. McClaskey*, 151 Pa. Superior Ct. 467, 30 A. 2d 179, which held for the reasons herein stated, that a zoning ordinance prohibiting a sign which did not relate to the business conducted on the premises was unconstitutional.

*Silver v. Zoning Board of Adjustment*, 381 Pa. 41, 112 A. 2d 84, relied upon by the majority opinion, is not controlling because the only question decided in that case was whether a sign on a vacant lot was a primary or an accessory use.

Under the principles hereinabove set forth, I would hold that the Ordinance as interpreted by the Board

of Adjustment and applied to this case was arbitrary, discriminatory, confiscatory and a palpable violation of plaintiff's constitutional rights.