## Time Sales Finance Corp. Appeal

*L. M. Aglow* and *Samuel C. Nissenbaum*, for appellant.

*A. J. Persichetti*, for board.

SLOANE, P. J., November 1, 1960.—Time Sales Finance Corp. conducts its business in its owned property at 1306 Arch Street. To attract prospective customers, we suppose, it desires to erect a sign somewhat over its sidewalk, with a clock on one side and a thermometer on the other side. The sign remains stationary for one minute, then it revolves slowly to visualize the opposite side; it remains in the new position for one minute; it repeats the process. Alternately, you see the time, the temperature.

The owner made application for this sign to the department of licenses and inspections: Philadelphia Code, sec. 14-1903(1). Since it involved a projection partly over the sidewalk, the department referred the matter to the art commission for its approval.*

The art commission refused approval; the department denied the application. The owner appealed to the board of license and inspection review (Philadelphia Home Rule Charter, section 5-1005) and after hearing, the art commission and the department were sustained. The owner then took this appeal from the board's decision; we reversed.

We are not concerned with any question of fire or health or safety or nuisance or welfare. Concededly,

---

* Philadelphia Home Rule Charter provides: Section 5-903 Art Commission:

(1) The art commission shall: "(d) Approve any structure or fixture to be erected by any person upon or to extend over any highway, stream, lake, square, park or other public place within the City."

no risk or hazard or problem is involved. There is no such significance in this case.

The art commission, the department, the board did not approve this sign for one reason only: It revolved. "We would pass it if it were stationary; we would not pass it if it revolves." So spoke Mr. Lewis, a member of the art commission; because the sign revolved, it turned itself into something "aesthetically inappropriate."

Most of Mr. Lewis' testimony concerned wholly unrelated situations. He declared that small and quiet signs were better; merchants, he said, were only harming themselves when they put up large flashing signs. There was no showing that this owner's sign flashed; it will not flash. Mr. Lewis spoke further: "It is not a good sign from an art standpoint, in the fierceness and insistence of the whirly-girly-swirly part of the thing." Clearly he was talking of some other sign; in this description we do not recognize this owner's sign. Mr. Lewis referred to the art commission's disapproval of flashing torches shooting up fire. Nowhere in the record can we find why, prosaically or poetically, this sign, because it rotates, is "aesthetically inappropriate" especially when you look at the signs now allowed or existing in this neighborhood.

We understand the problem as to signs (Landau Advertising Co., Inc. v. Zoning Board of Adjustment, 387 Pa. 552), as to marquee (Walnut & Quince Street Corp. v. Mills et al., 303 Pa. 25); we gave our own mite to the question of signs in the area of the Mall: Levin v. Philadelphia, 10 D. & C. 2d 272. But we are aware too that as a general proposition "aesthetic reasons" alone, in our Commonwealth, are not enough to stop an owner from doing what he wants with his property. See Medinger Appeal, 377 Pa. 217, 226. See and cf. Berman v. Parker, 348 U. S. 26. Our Supreme Court allowed an antenna mast, 32 feet high, in the backyard of a home as an accessory use and made it clear

that "A home owner cannot be deprived by zoning of a right to use his own property as he wishes merely because a zoning board believes that what he intends to erect is not artistic or aesthetic": Lord Appeal, 368 Pa. 121, 128. Medinger and Lord were zoning cases but we see no reason why the concept should not apply here. Though the matter came to the art commission because the sign to be erected extended over the "highway" (see footnote), it seems to me the public concern is with "highways" as it is with zoning. Here the question is not, and there is no complaint, that the sign extends or projects over the "highway", but whether it will stand still or turn.

The owner creates no nuisance. Photographs of the vicinity, the same block, showed several larger, flashing and garish signs. And the commission did not say the sign as such was unaesthetic; to say its slow rotation begins to affect the soft sensitivity to art and beauty, to us appears strained in the circumstances of this case, though, indeed, we grant to the art commission a superior sense of discrimination.

In my learning, I have only the abacus of art. But I am told that movement creates a pattern from an art viewpoint, that the Alexander Calder mobile has its own recognition in the Modern Museum of Art. We know of those famous old clock antiques that startle the wonder of child, and adult, to the time call of the cuckoo, the clock that ejects the figure to strike the hour and returns to his hidden niche to spend his time watching it.

But we do not compare. We are not here to evaluate the El Greco or Renoir or Monet or Picasso. We do not pass on beauty; we pass on rights. Our beauty is our own, not deontological; our status is our duty to adjudicate rights.

We could not find a substantial, reasonable basis for the decision of the board, the department and the art commission, and thus it is, that we reversed it. To us,

as to this case, a decision otherwise would be a step toward "autocratic omnipotence." We hold with our Supreme Court that "an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property": Lord Appeal, supra, quoted in Medinger Appeal, supra, p. 221.