In re the APPEAL OF DILLON REAL ESTATE CO., INC., and Dillon Companies, Inc., Trading and Doing Business As Turkey Hill Minit Markets, from the decision of the Borough Council of the Borough of Mount Pocono, Monroe County, Pennsylvania.

Dillon Real Estate Co., Inc., Dillon Companies, Inc., Turkey Hill Minit Markets, Appellants,

v.

Zoning Hearing Board of the Borough of Mount Pocono.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided Feb. 12, 1997.

William C. Crosswell, Lancaster, for appellants.

James V. Fareri, Stroudsburg, for appellee, Borough of Mount Pocono.

Robert M. Maskrey, Stroudsburg, for appellee, Zoning Hearing Board of Mount Pocono Borough.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Dillon Real Estate Company, Inc., and Dillon Companies, Inc., t/d/b/a Turkey Hill Minit Markets (Turkey Hill), appeals from an order of the Court of Common Pleas of Monroe County (common pleas court) sustaining the decisions of the Borough of Mount Pocono (Mount Pocono) and the Mount Pocono Borough Zoning Hearing Board (ZHB) denying Turkey Hill's land development plan.

Turkey Hill owns a parcel of real estate at the intersection of Route 611 and Kinney Avenue in Mount Pocono. The parcel is located in a downtown commercial (C–1) zoning district. Turkey Hill submitted a land development plan to the Mount Pocono Borough Council (Borough Council) proposing to establish a convenience store which sells gasoline. The Borough Council determined that the sale of gasoline is not permitted on Turkey Hill's parcel and disapproved the convenience store plan.

Turkey Hill appealed the decision to the ZHB,[1] arguing that the sale of gasoline

---

1. We note that Turkey Hill also appealed the Borough Council's decision to the common pleas court.

would not be the principal use of the property but, rather, an accessory use to the convenience store. The ZHB made the following relevant findings of fact:

4. The Property is located in the C–1 Downtown Commercial District as shown on the Official Zoning Map of Mount Pocono Borough.

. . . .

9. Turkey Hill ... proposes to construct a self-service gasoline facility consisting of a single 24' × 36' canopy and two multi-product dispensers ("MPDs") which would allow a maximum of four motor vehicles to obtain fuel at the same time.

. . . .

13. On a gross sales basis, gasoline sales constitute forty-seven per cent (47%) of Turkey Hill's gross sales at stores with gasoline facilities.

ZHB's Decision, December 28, 1994, (Decision) at 6–7, Findings of Fact, Nos. 4, 8, 13.

The ZHB concluded that "[t]he Mount Pocono Zoning Ordinance prohibits gas sales in the C–1 zone." Decision at 8, Conclusions of Law, No 3. The ZHB also concluded that "[a]s the sale of gasoline is prohibited in a C–1 zone ... it is prohibited for all purposes, as a permitted use, as well as an accessory use." Decision at 8, Conclusions of Law, No 7. Accordingly, the ZHB dismissed Turkey Hill's appeal.

Turkey Hill appealed the ZHB's decision to the common pleas court, which held oral argument on the matter.[2] The common pleas court concluded that the sale of gasoline is not an accessory use and that even if it was an accessory use, gasoline sales are not permitted in a C–1 zoning district pursuant to Section 5.2(c) of the Mount Pocono Zoning Ordinance (Ordinance).

2. We note that Turkey Hill's appeal of the Borough Council's decision to the common pleas court was consolidated with the appeal of the ZHB's decision.

3. Where the common pleas court takes no additional evidence, the standard of review in an appeal from a decision of a zoning hearing board is to determine whether the board committed an error of law or a manifest abuse of discretion. *Larsen v. Zoning Board of Adjustment,* 654 A.2d 256 (Pa.Cmwlth.1995), *aff'd,* 543 Pa. 415, 672

On appeal to this court,[3] Turkey Hill contends that the common pleas court erred in concluding that the sale of gasoline is prohibited in a C–1 zoning district. Turkey Hill asserts that the gasoline sales are permitted as long as such sales constitute secondary or accessory uses. We do not agree.

 Scrutiny of the record reveals that gasoline sales are expressly permitted in general commercial (C–2) zoning districts under the wholesale and retail trade provisions of Section 5.8(a) of the Ordinance. Ordinance at v–7; Reproduced Record (R.R.) at 26a. Such sales are *not* expressly permitted in C–1 zoning districts under any provision of Section 5.7(a) of the Ordinance. Ordinance at v–5—v–6; R.R. at 24a–25a. All parties agree that the property is zoned C–1. Additionally, Section 5.2(c) of the Ordinance provides that "[a]ny use not permitted by this Ordinance within any district shall be deemed to be prohibited within that district." Ordinance at v–2; R.R. at 23a. The common pleas court correctly concluded that the Borough Council by this Ordinance restricted gasoline sales, including, but not limited to accessory sales, to C–2 districts. There is nothing improper about prohibiting the sale of gasoline in a specific zone such as Mount Pocono did here.

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of February, 1997, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I do not believe that section 5.2(c) of the

A.2d 286 (1996). An abuse of discretion occurs when the board's findings are not supported by substantial evidence in the record. *Eichlin v. Zoning Hearing Board,* 671 A.2d 1173 (Pa. Cmwlth.1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Board,* 166 Pa.Cmwlth. 520, 646 A.2d 717 (1994), *appeal denied,* 540 Pa. 636, 658 A.2d 798 (1995).

Borough of Mount Pocono (Borough) Zoning Ordinance (Ordinance)[1] prohibits the sale of gasoline as an accessory use in a C-1 zoning district. Quite the contrary, I believe that the plain language of section 5.7(a) of the Ordinance permits the sale of gasoline *if* such is an accessory use to any of the enumerated principal uses.

## I. Plain Language

The majority, without setting forth the language of section 5.7(a) of the Ordinance, simply states that gasoline sales "are *not* expressly permitted in C-1 zoning districts under any provision of Section 5.7(a) of the Ordinance." (Majority Op. at 1265.) When interpreting a local zoning ordinance, I believe that this court must examine carefully the actual language of the ordinance to determine its proper meaning.

Section 5.7(a) of the Ordinance states: "The following uses *and* their accessory uses are permitted by right." (R.R. at 24a.) (Emphasis added.) Clearly, two things are permitted by right in a C-1 zoning district: (1) the following uses *and* (2) their accessory uses. Because the Ordinance distinguishes between the two, it is apparent that "the following uses" refers to principal uses. Thus, the plain language of section 5.7(a) of the Ordinance, ignored by the majority, indicates that accessory uses to the enumerated principal uses are permitted by right in a C-1 zoning district.[2]

## II. Absurd Result

Although section 5.7(a) of the Ordinance clearly distinguishes between the enumerated principal uses and their accessory uses, the majority states that, under section 5.2(c) of the Ordinance, an accessory use is prohibited *unless* it is among the enumerated uses. (Majority Op. at 1265.) I believe that this interpretation of the Ordinance leads to an absurd result.[3]

For instance, section 5.4 of the Ordinance, which covers permitted uses in an R-1 residential district, lists only one permitted use: "single family detached dwelling." (R.R. at 23a.) According to the majority, section 5.2(c) of the Ordinance would prohibit *any* accessory use to a "single family detached dwelling" *unless* it is *another* "single family detached dwelling."

In other words, the majority reads section 5.2(c) of the Ordinance to mean that, in an R-1 residential district, a "single family detached dwelling" may *not* have a parking space, a fence or wall, a detached garage, a storage shed, a green house or any other accessory use; indeed, none of these are listed as permitted uses in section 5.4 of the Ordinance. However, section 6.3 of the Ordinance *permits* parking spaces, fences and

---

1. Section 5.2(c) of the Ordinance provides as follows:

 *Prohibited Uses.* Any use not permitted by this Ordinance within any district shall be deemed to be prohibited within that district.
 (R.R. at 23a.)

2. In this regard, section 5.7(a) of the Ordinance is like certain local zoning ordinances which list "Accessory Uses" as one of the enumerated permitted uses. *See Overbrook Farms Club v. Zoning Board of Adjustment,* 351 Pa. 77, 40 A.2d 423 (1945); *Platts v. Zoning Hearing Board,* 654 A.2d 149 (Pa.Cmwlth.1995); *Toth v. Allentown Zoning Hearing Board,* 92 Pa.Cmwlth. 593, 499 A.2d 1142 (1985); *Taddeo v. Commonwealth,* 49 Pa. Cmwlth. 485, 412 A.2d 212 (1980). By including "Accessory Uses" in the list of permitted uses, the ordinances make clear in a different way that accessory uses to the enumerated principal uses are permitted.

 In *Landau Advertising Co. v. Zoning Board of Adjustment,* 387 Pa. 552, 128 A.2d 559 (1957), our supreme court considered the meaning of language which preceded a list of permitted uses

and which made reference to accessory uses as in section 5.7(a) of the Ordinance. In *Landau Advertising,* the local zoning ordinance stated: "In each district, only such uses and uses accessory and incidental thereto, as hereinafter specified, will be permitted." *Id.* at 555, 128 A.2d at 561. Our supreme court interpreted this provision to mean:

 [F]ailure of the [ordinance] to enumerate [a particular use] among the permitted uses in [a zoning district] does not allow such use, and ... the only [uses] permitted in such a zoned district are those specifically enumerated by [the ordinance] *and those which could properly be classified as an accessory use.*

 *Id.* at 355–56, 128 A.2d at 561 (emphasis added). Thus, here, the specified principal uses *and* those uses which could properly be classified as an accessory use are permitted in a C-1 zoning district.

3. In ascertaining the intention of a law-making body, we presume that the law-making body did not intend a result that is absurd. 1 Pa.C.S. § 1922(1).

walls, detached garages, storage sheds, greenhouses and more *as accessory uses* in a residential zone. (R.R. at 30a.)

If section 5.2(c) of the Ordinance prohibits any accessory use which is not listed as permitted for a particular zoning district, then the Ordinance contradicts itself. Because we must presume that the Borough did not intend such an absurd result, section 5.2(c) of the Ordinance must apply only to principal uses and *not* to accessory uses.

### III. Accessory Use

Although the majority fails to address whether the sale of gasoline is an accessory use to any of the enumerated principal uses in section 5.7(a) of the Ordinance, I will do so here. First, I note that the specified principal uses include "Retail Trade of General Merchandise" and "Retail Food Stores." (R.R. at 24a.) Because a convenience store involves the retail sale of general merchandise and food, it is apparent that Turkey Hill may use its C–1 property to operate a convenience store as its principal use.

Of course, Turkey Hill may *not* sell gasoline *if* the sale of gasoline is the principal use. However, *if* the sale of gasoline is properly classified as an accessory use to a convenience store, then Turkey Hill *may* sell gasoline as well as merchandise and food.[4] Section 302 of the Ordinance defines "accessory use" as "[a] use customarily incidental and subordinate to the principal use ... and located on the same lot with such principal use...." (R.R. at 5a.)

Under *Food Bag, Inc. v. Mahoning Township Zoning Board of Adjustment*, 51 Pa. Cmwlth. 304, 414 A.2d 421 (1980),[5] and *Borough of Fleetwood v. Zoning Hearing Board*, 538 Pa. 536, 649 A.2d 651 (1994),[6] the sale of gasoline constitutes an "accessory use" to a convenience store where it is determined that: (1) convenience stores are an independent industry; (2) self-service gasoline pumps are usually found with convenience store food markets; and (3) the sale of gasoline would be secondary to the use of the property as a convenience store food market. Moreover, with respect to the third element, the sale of gasoline is "secondary" to the principal use where: (1) the use to which the *majority of the area of the property* will continue to be devoted is the sale of retail products; and (2) the estimated *number of patrons who purchase items other than gasoline* far exceeds the number of customers who purchase only gasoline. *Borough of Fleetwood.*

Here, rather than relying upon either of these criteria, the ZHB relied upon gross sales figures to determine whether Turkey Hill's sale of gasoline would be a principal or accessory use. In *Philm Corp. v. Washington Township*, 162 Pa.Cmwlth. 126, 638 A.2d 388, 391 (1994), *appeal denied*, 540 Pa. 635, 658 A.2d 798 (1995), this court stated:

> [H]ow an establishment derives its income is not determinative of its principle use. Thus, for example, a publisher of a newspaper may derive all or most of its income from the sale of advertisements rather than sales to its readers and still retain its function as a newspaper providing news to its readership. Similarly, [here, the club's] principle activity is providing entertainment, but its income derives from the incidental sale of food and drink, while its dancers derive at least a portion of their income directly from the patrons for the entertainment. Thus, the

4. The determination of whether a proposed use is an accessory use is a mixed question of fact and law. The determination of whether the use constitutes an accessory use under a particular zoning ordinance is a question of law; however, the question can be answered only by consideration of the underlying factual situation. *Thomas v. Zoning Hearing Board*, 121 Pa.Cmwlth. 393, 550 A.2d 1045 (1988).

5. In *Food Bag*, we considered whether the sale of gasoline was an "accessory use" to a convenience store based on a definition of "accessory use" that is identical to the one in section 302

here. We held: "In order to establish a right to an accessory use, Appellant must prove that the use sought is secondary to the principal use and is usually found with that principal use." *Food Bag*, 414 A.2d at 423.

6. In *Borough of Fleetwood*, our supreme court considered whether the sale of gasoline was an accessory use to a Turkey Hill convenience store. In that case, where "accessory use" was also defined as it is here, the court followed *Food Bag* and held that the sale of gasoline was an accessory use to a Turkey Hill convenience store.

derivation of [the club's] income does not conclusively indicate the principle use of the premises.

Guided by *Borough of Fleetwood* and *Philm,* I believe that the ZHB improperly relied upon gross sales to determine whether the sale of gasoline is an accessory use.[7] Applying the test in *Borough of Fleetwood,* if the majority of the area of the property is devoted to the sale of merchandise and food, and the majority of the customers purchase merchandise and food, then the sale of gasoline would be secondary and, thus, would be an accessory use.

In this case, the ZHB found that 2,963 square feet is devoted to the sale of merchandise and food, (ZHB's Finding of Fact, No. 8), and 864 square feet is devoted to the sale of gasoline, (ZHB's Finding of Fact, No. 9).[8] Moreover, the record contains testimony and exhibits which show that less than 20 percent of Turkey Hill's customers use the convenience store to buy gasoline.[9] (R.R. at 103a, 117a, 356a.) Unfortunately, the ZHB failed to make findings of fact with respect to the number of customers who would use the convenience store to buy either merchandise and food or gasoline.

Because I believe that the sale of gasoline is permitted in a C–1 district *if* it is an accessory use to a convenience store, I disagree with the trial court's determination to the contrary. Moreover, a remand is necessary for additional findings on the number of customers using each function of the convenience store site.

---

**7.** Indeed, a business exists for its customers. Thus, if more customers buy food and merchandise than buy gasoline, then the principle use of the property is to sell food and merchandise.

**8.** Turkey Hill testified that the area devoted to the sale of gasoline constitutes 4.22 percent of the total lot area. (R.R. at 101a, 125a–26a.) Turkey Hill also presented a report on the square

footage requirements for a convenience store. (R.R. at 157a–58a.)

**9.** According to Turkey Hill, in 1993, a typical Turkey Hill convenience store had an average of 5,087 merchandise customers per week and an average of 1,200 gasoline customers per week; thus, only 19.09 percent of Turkey Hill's customers buy gasoline. (R.R. at 113a–14a.)