## Seitchik v. Zoning Board of Adjustment

*Israel Stiefel*, for appellant.

*Lenard L. Wolffe*, assistant city solicitor, for appellee.

ALESSANDRONI, P. J., July 10, 1957.—Appellant applied for a use registration permit to occupy premises 7359-7361 North 19th Street, Philadelphia, as a luncheonette. The permit was refused and appellant appealed to the zoning board of adjustment. The board denied the application for the permit. Appellant appealed. The property is located in a "D" residential district; this appeal concerns 7361 North 19th Street only, although premises 7359 are included; however, 7359 is a residence and will continue to be occupied as a residence. Appellant has entered an agreement to purchase both properties, and that is the only relationship of property numbered 7359 to this matter. Appellant as equitable owner is in the same position as the legal owner when seeking a variance: O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379.

The one-story building designated as 7361 North 19th Street is attached to 7359 North 19th Street; it adjoins it on the north side. The board concluded on the testimony before it that appellant had failed to prove unnecessary hardship; that the proposed use would be contrary to the public interest for the reasons specified and that the health, morals, safety and general welfare of the immediate neighborhood and that more particularly of Mrs. Traganza would be adversely affected.

A hearing was had and testimony heard by the court on this appeal.

The board's record reveals that the premises in question are located at the northern end of a row of row homes on the east side of the 7300 block of North 19th Street. The building designated as 7361 North 19th Street was built so that its westerly side is to the west of the actual building line of the row; it occupies space which all the houses in the row utilize as lawns, i.e., that space between the public sidewalk and the actual building line.

Facing 19th Street are two large bulk windows; the north side of the building is bounded by a driveway. Between the driveway and Cheltenham Avenue, the next street to the north, there is a drug store; the front of the drug store faces Cheltenham Avenue and the gable end of which is parallel to 19th Street. The door giving entrance to 7361 North 19th Street is not on 19th Street as such, but is placed on an angle of approximately 45 degrees; it faces toward the intersection of 19th Street and Cheltenham Avenue. This entrance would be invisible to one standing on the east side of the street, i.e. in front of the row homes and looking toward the north.

This one-story building is a nonconforming building and it has been occupied and utilized as a nonconforming use, i.e., one not permissible in a "D" residential district. The most recent use was that of a retail meat market; this use was discontinued about six months prior to this application.

Appellant has urged that the board erred as a matter of law because appellant is merely resuming occupation as a nonconforming use of the same category as the discontinued use. The gist of the argument is that since meat markets and luncheonettes are permitted in the same district and are, therefore, for zoning purposes in the same category, that upon discontinuance of the nonconforming use, as a meat market, any use permitted in the same district in which the discontinued nonconforming use would have been permissible may now be instituted as of right.

This position cannot be maintained because the applicable law is to the contrary. Prior to the enactment of the Code of General Ordinances of the City of Philadelphia, effective date February 29, 1956, section 4(4) of the Zoning Ordinance of 1933, provided:

"DISCONTINUED USE. A non-conforming use where discontinued may be resumed as the same class

of use but cannot be resumed as a non-conforming use of a lower class."

This language alone appears to support appellant's position; but Darling v. Zoning Board of Adjustment of Philadelphia, 357 Pa. 428, is to the contrary. Were the ordinance which now controls identical to that previously construed in Darling v. Zoning Board of Adjustment, supra, we could distinguish this case on the facts.

However, the Code of General Ordinances, supra, section 14-104(5), now provides:

"DISCONTINUED USE. A non-conforming use when discontinued may be resumed as the same non-conforming use and no other."

The deletion of the word "class" from the language of the Ordinance is of more than passing significance; it provides a complete answer to appellant's argument that his application should have been granted as of right in that it is merely a permitted resumption of a nonconforming use.

The board's action in considering the application as a request for a variance was therefore correct; but, although its consideration was of the proper type, the board erred in its decision.

Initially the board concedes that the property is completely unsuitable for use as a residence. Despite this concession, the board has denied the use registration permit. The board's grounds are: (a) Appellant did not establish unnecessary hardship; (b) the use was contrary to the public interest because it would be offensive to the neighbors; and (c) the use would have an adverse effect on the health, morals, safety and general welfare of the immediate neighborhood and particularly on Mrs. Traganza, a neighbor who resides at 7357 North 19th Street.

Under the provisions of the Act of May 6, 1929, P. L. 1551, section 8, 53 PS §14759, testimony was

taken to assist the court in reaching such decision as might be just and proper: Walker v. Zoning Board of Adjustment, 380 Pa. 228, see particularly the concurring opinion of Mr. Justice Bell at 234 et seq. See also Laudau Advertising Co., Inc., v. Zoning Board of Adjustment, 387 Pa. 552, 554.

The board concluded on the testimony before it that the operation of appellant's business would bring additional traffic into the area and would cause additional noise. There was testimony before this court that the majority of appellant's customers were not transients, and that he operated an orderly business. A witness protesting the proposed use conceded that he never saw people loitering or otherwise congregating about appellant's present place of business (appellant operates his business around the corner at 1906 Cheltenham Avenue). The witness complained about the handling of garbage and the creation of a parking problem, but conceded that these problems were the result of the operation of another business, not appellant's.

The board's finding that the use "would be offensive to the neighbors because of dirt" is gratuitous and unwarranted because there is no evidence to support it. No evidence was presented to support the finding that an undue amount of noise would result or additional traffic would increase the burden on an overcrowded area. We therefore conclude that the findings of fact of the board are unsupported by competent evidence.

The record fails to reveal the existence of facts which would indicate a threat to the health, safety, morals and general welfare of the immediate neighborhood. We are at a loss to understand the basis for the conclusion that a threat of such a nature existed and existed with especial force directed toward one individual neighbor. Absent clear evidence, we know of no authority for denying a legitimate use of property

because of one individual. Parenthetically, it would appear that as to that individual the use might have to be such as to constitute a legal nüisance. The right of the neighbor can rise no higher than that of appellant.

After finding unwarranted facts based on nonexistent evidence, the board concluded, inter alia, "the proposed use of it for a luncheonette is not a *proper use* to be made of this nonconforming structure" (Italics supplied). We have examined the enabling act of assembly as well as the ordinance. Our examination fails to reveal power or authority in the board to determine what is a "proper use", except within the limits prescribed by law. The propriety of the use as such is of no concern to the board. If the use is a permitted one, or one that should be granted on the record, whether it is or is not a proper use lies outside the province of the board.

We have noted, in addition, an alarming tendency in this record; both protestants and the board have presumed to suggest uses for this property that they deem desirable. A witness before this court suggested that the property be used to operate either a small dress shop or a gift shop. The board's brief suggests use as professional offices or retail sales shops. This advice is not only gratuitous and presumptuous but offensive as well. The owner of the property has the right to decide the use which he desires, subject to law, and the board has no authority to suggest uses.

It is to be noted, that even the uses suggested, albeit gratuitously, are not permitted uses, except upon issuance of a variance. So that the board would have to find unnecessary hardship before it could grant a variance even for the uses it has suggested.

Thus, the board demonstrates by its decision, the impossibility of its own position; it has impaled itself on the horns of a dilemma. The board relied heavily

on Devereaux Foundation, Inc. Zoning Case, 351 Pa. 478. That case held that a purchaser of property could not establish unnecessary hardship by claiming ignorance of the zoning classification. Therefore, following the board's reasoning, no one could ever establish unnecessary hardship because each applicant would be charged with prior knowledge. Therefore, unless someone appeared who would be interested in operating a retail meat market at this location, the property must remain vacant and a total loss. Even if one applied for one of the suggested uses, the board would have to refuse the application. Under the guise of regulation, the owner of property would be deprived of its use.

The action of the board is an effective denial of any use; its reasoning precludes the possibility that anyone could establish an unnecessary hardship. But we know of no greater hardship than denial of use; if continued by fiat of the board, the logical result is confiscation.

Previously an application for use as a synthetic dry cleaning plant was denied by the board; it now refuses a use registration for a luncheonette. The application was refused despite the board's agreement that a residential use is impossible. The decision indicates that no individual in the future could establish hardship sufficient to meet the standard for a variance. The board has effectively made it impossible for anyone to use the property except as the resumption of the nonconforming use; its holding in this case prevents the exercise of its own discretion.

The board erred as a matter of law in failing to find unnecessary hardship. Pincus v. Zoning Board of Adjustment, 376 Pa. 175, relied upon by the board is inapposite. The controlling factors in that case were two, (a) suitability for the use of the zoning classification and (b) tremendous economic aggrandizement if the commercial use were granted. In this case we have

the board's concession as to nonsuitability and no evidence that appreciation of value would accrue if the variance were granted.

A finding of unnecessary hardship does not force the issuance of a variance if there are sufficient factors militating against the use so that one might conclude that the use would be contrary to the public interest. Our examination of the record fails to disclose any evidence to support the board's findings of a use contrary to the public interest in that it would be detrimental to the health, safety, etc. of the public. Even if this court were bound by the findings of fact of the board, which it is not, we would have to conclude that the findings are not supported by competent evidence.

Appellant has established unnecessary hardship; there is no evidence that the proposed use would be contrary to the public interest; he is therefore entitled to his permit.

### Order

And now, to wit, July 10, 1957, appellant's appeal from the decision of the zoning board is sustained.

The zoning board of adjustment is directed to issue the use registration permit requested.